Donald WALLACE et al., Plaintiffs-Appellees,

v.

Michael KERN et al., Defendants-Appellants.

No. 1074, Docket 74–1434.

United States Court of Appeals,
Second Circuit.

Argued April 25, 1974.

Decided July 8, 1974.

As Amended on Rehearing and Rehearing
En Banc Denied Oct. 4, 1974.

Hillel Hoffman, Asst. Atty. Gen. of N. Y., New York City (Louis J. Lefkowitz, Atty. Gen. of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen. on the brief, Joel Lewittes, Asst. Atty. Gen., of counsel), for defendants-appellants.

Stephen M. Latimer, Daniel L. Alterman, Center for Constitutional Rights, New York City (James Reif, National Lawyers Guild, New York City, Alvin J. Bronstein, Nancy C. Crisman, National Prison Project, Washington, D. C., Robert L. Boehm, William M. Kunstler, Center for Constitutional Rights, New York City, on the brief), for plaintiffs-appellees.

Pierce Gerety, Jr., New York City (Robert Kasanof, William Gallagher, New York City, on the brief), for Legal Aid Society, as amicus curiae.

Robert Plotkin, Washington, D. C., on the brief, for the National Legal Aid and Defender Ass'n as amicus curiae.

Before LUMBARD and HAYS, Circuit Judges, and JAMESON, District Judge.*

HAYS, Circuit Judge:

In July 1972 a committee of inmates awaiting trial or sentencing in the Brooklyn House of Detention for Men brought a class action pro se in the District Court for the Eastern District of New York. The defendants were six individual Justices of the New York Supreme Court, all of whom presided in criminal cases in Brooklyn. The plaintiffs alleged that the district court had jurisdiction under 28 U.S.C. § 1343 (1970). In substance, they prayed for interlocutory and permanent relief under section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1970), restraining the defendant Justices from violating inmate rights guaranteed by the federal Constitution.[1]

A week after the action was commenced, Judge Weinstein dismissed all claims relating to errors in the cases of individual prisoners on the authority of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and all claims relating to individual Justices as matters more appropriately resolved by local political processes. Nonetheless, he found that the complaint stated a core of facts going to the prompt and fair disposition of criminal cases in Brooklyn, and going to the condition and treatment of inmates in the House of Detention. He subsequently appointed counsel of the inmates' choosing to aid in presenting their side of the difficult jurisdictional and substantive issues presented by the case.

The prisoners by their appointed counsel filed an amended complaint in October 1972, and a second amended complaint in January 1973. Judge Weinstein disqualified himself, and the case was assigned to Judge Judd. The second amended complaint stated the same eight claims for relief as in the first amended complaint and also alleged cruel and unusual punishment by reason of lengthy pretrial delays, and denial of equal protection because the plaintiffs were indigent. All Justices of the Kings County Supreme Court and various other court and city officials were joined as defendants.[2] Judge Judd de-

* Honorable William J. Jameson, Senior District Judge for the District of Montana, sitting by designation.

1. The prisoners claimed, in effect, that Kings County bail procedures denied them equal protection of the law, that the Supreme Court's refusal to entertain pro se applications denied them due process of law, that lengthy pretrial and pre-sentencing delays evidenced a denial of their right to speedy trial, and that practices in identifying suspects and in obtaining indictments were contrary to state law.

2. The second amended complaint alleged the following claims for relief:
 1) that the case loads of Legal Aid Society attorneys were so great as to deny indigent inmates the effective assistance of counsel;
 2) that excessive prosecutorial delay in presenting cases to the grand jury, excessive delay in bringing cases to trial, and excessive delay in preparing pre-sentence reports denied inmates their right to speedy trial;
 3) that the Kings County Supreme Court consistently set excessive bail;
 4) that lengthy periods of pretrial incarceration deprived the inmates of liberty without due process of law;
 5) that the court's practice of refusing to accept pro se applications from inmates who have been assigned Legal Aid counsel denied them due process of law;
 6) that the Corrections Department's alleged practice of unnecessarily shuttling inmates between the House of Detention and the court house was designed to intimidate the inmates and induce them to plead guilty;
 7) that various practices in the Supreme Court had the effect of intimidating inmates into pleading guilty rather than stand trial; and
 8) that the above practices discriminated against indigents on account of their inability to make bail.
 Of these claims for relief, only the second is involved in this appeal, and that only to the extent that it alleges pretrial delay.

nied the defendants' subsequent Rule 12(b)(6) motion to dismiss, except that he dismissed the claims relating to defendants other than the Supreme Court Justices.

In February 1973 the district court held a hearing on the plaintiffs' motion for preliminary injunction, taking evidence on the claims relating to pro se applications, Legal Aid Society representation, and pretrial delay. See note 2, supra. In March 1973 the court granted class status to the plaintiffs.[3]

On May 10, 1973, the district court granted the plaintiffs' motion for preliminary injunction as to two of their claims, restraining the Clerk of the Kings County Supreme Court from refusing to place pro se applications on the court's calendar, and restraining the Legal Aid Society from accepting more than forty cases per lawyer, reserving decision as to the other six claims. The Legal Aid Society and the Justices of the Supreme Court appealed to this court, and on June 27, we reversed and vacated the district court's order:

> "In the case involving the Legal Aid Society we hold that the court has no jurisdiction under Section 1983 since the Society was not acting under color of state law. With relation to the order directed at the court personnel we hold that under the principle known as comity a federal district court has no power to intervene in the internal procedures of the state courts." Wallace v. Kern, 481 F.2d 621, 622 (2d Cir. 1973) (per curiam), cert. denied, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974) (citation omitted).

On July 20 and July 25, 1973, the district court held additional hearings on the plaintiffs' motion for preliminary injunction as to the speedy trial claim. A number of witnesses testified for the prisoners, including three of the prisoners and a psychiatrist at the House of Detention,[4] and Justice Vincent Damiani testified for the defendant Justices.[5] The district court granted the inmates' motion for a preliminary injunction, ironically, almost eight months after the hearing. It ordered that each prisoner detained while awaiting trial in the Kings County Supreme Court for more than six months (or more than nine months in the case of one accused of murder) be allowed to demand a trial, and be entitled to release on his own re-

---

3. In granting class status, the district court established two sub-classes: all detainees in the House of Detention under indictment, and all detainees not under indictment.

4. The testimony of Barry Wilson was typical of the three inmates who testified. He stated that he had not come to trial after nearly eleven months of post-arrest incarceration. Bernard L. Segal, an attorney and a professor at Golden Gate University, testified that pretrial delay generally damages the prisoner in five ways: it denies a constitutional right, it prejudices the prisoner's economic and social interests, it has such adverse psychological effects as inducing anxiety, irritation and bitterness, it impairs the inmate's ability to aid his counsel in preparing his case, and it coerces the prisoner to accept less than the full measure of constitutional rights. Dr. Sheldon Cholst, a psychiatrist with the prison Health Service of the House of Detention, testified that lengthy pretrial delays of uncertain duration cause anxiety, uncertainty and resentfulness, and contribute to the fact that the suicide rate among inmates is 25 times higher than that of the

general population. Samuel Dawson, Associate Attorney in Charge of the Brooklyn Supreme Court Office of the Legal Aid Society, testified that in a number of Criminal Parts, the most recent cases tried were not the oldest cases on the calendar. He said that the expansion of the Legal Aid Trial Parts had not resulted in speedier trials, and he predicted that the total number of trials in 1973 would be less than the total in 1972.

5. Justice Damiani testified as to the steps taken by the Brooklyn Supreme Court to reduce its criminal backlog. The number of Trial Parts was increased by one-third. The court established Conference Parts to eliminate cases in which defendants are willing to plead guilty and instituted a digital system to eliminate fragmented representation by the Legal Aid Society. Judges have been assigned to the House of Detention to conduct bail conferences, conferences which may be initiated by a defendant by writing an informal letter to the court. The Legal Aid Society caseload has been reduced to the limits set by Judge Judd's May 10 order, even though that order was vacated on appeal.

cognizance if not brought to trial within 45 days of his demand. The order provided that delays caused by the inmate would not toll the initial six or nine month period, but that such delays would toll the 45 day period following the demand for trial. The order further provided that notice of its contents should be posted in the various institutions holding persons awaiting trial in Kings County, and be distributed to each new prisoner upon his arraignment in the Kings County Supreme Court.

The Justices appealed. On April 2, 1974, we granted a stay of the preliminary injunction pending appeal.

We reverse and vacate the district court order.

## I.

We have noted more than once in the past that funding, facilities and personnel in Kings County are chronically inadequate to the task of bringing criminal cases promptly to trial. Wallace v. Kern, supra; Thorne v. Warden, 479 F.2d 297, 299 n.2 (2d Cir. 1973); see United States ex rel. Frizer v. McMann, 437 F.2d 1312, 1314–1315 (2d Cir.) (en banc), cert. denied, 402 U.S. 1010, 91 S.Ct. 2196, 29 L.Ed.2d 433 (1971). As of July 1973 there were over 700 persons named in indictments in the Kings County Supreme Court who had been in custody awaiting disposition of their cases for more than six months, 210 of whom had been in custody for more than a year. Lengthy pretrial confinement continues to be the rule in Kings County, despite the reform measures outlined by Justice Damiani. See note 5, supra. By January 1974 there were still 398 inmates awaiting trial who had suffered more than six months' confinement. The time lapse from the date of arrest to the date of trial in run-of-the-mill cases has been as long as 27 months. Such delays contribute to overcrowding at the House of Detention, a facility with a rated capacity of 840 inmates, but which housed an average of 1,391

inmates during 1973, and an average of 995 inmates during January 1974.

Although we are "entirely sympathetic with the purposes which the district judge sought to accomplish by his order," Wallace v. Kern, supra, 481 F.2d at 622, we must reverse and vacate that order.

## II.

The Supreme Court's most recent statement on the Sixth Amendment's guarantee of a speedy trial, and indeed its first attempt to set out a definite approach to speedy trial claims, is Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). There the Court rejected the notion that the Sixth Amendment may be confined to a rigid set of rules. It held that as a matter of constitutional law the speedy trial right cannot be quantified into any specific period of time; that the Sixth Amendment does not require the state to bring a criminal defendant to trial within any specific time period.

In *Barker* the Court recognized the amorphous quality of the right to a speedy trial as well as its relative nature and its dependence on the circumstances of each case. Accordingly, the Court adopted an ad hoc balancing test under which the conduct of the prosecution is weighed against the conduct of the defense. In the course of balancing these relative circumstances, a court must consider four factors: the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant resulting from the delay. 407 U.S. at 530, 92 S.Ct. 2182.

In the present case the district court gave lip service to the *Barker* methodology and criteria, but in fact it failed to account for the four *Barker* factors, and it ignored the mandate to proceed on a case-by-case basis.

As to the first factor, the length of the delay, the district court made no finding of fact and pointed to

no rule of law to support its use of the curiously arbitrary six and nine month periods. *Barker* expressly rejects the notion that the Sixth Amendment can be quantified into a specific time period. The court must examine each particular delay, treating it as a "triggering mechanism." When and if there is a showing of "presumptively prejudicial delay," the court must extend its inquiry to a consideration of the other three factors. The length of delay that will provoke such inquiry "is necessarily dependent upon the peculiar circumstances of the case." 407 U.S. at 530–531, 92 S.Ct. at 2192. For example, a delay that would be presumptively prejudicial in the case of a defendant accused of a simple street crime might be tolerable in the case of a defendant accused of participating in a serious and complex conspiracy. 407 U. S. at 531, 92 S.Ct. 2182. The presumptively prejudicial period may be shorter in a case depending on the recollection of eyewitnesses than in a case depending on less perishable forms of evidence. See 407 U.S. at 531, n.31, 92 S.Ct. 2182. When it established its six month period, the district court failed to consider such unique factors as doubtless exist in the cases of individual pretrial detainees. It attacked the problem of calendar congestion in the Kings County Supreme Court with a blunt instrument. It fixed a uniform period of presumptively prejudicial delay, rather than undertake the fine, albeit difficult, case-by-case determination of whether a prejudicial delay exists as to any individual inmate.

██ The second of the *Barker* factors is "the reason the government assigns to justify the delay." 407 U.S. at 531, 92 S.Ct. at 2192. The district court in the present case did not inquire into the reason for delay specific to any given prisoner. It found only that the overcrowded criminal docket of the Kings County Supreme Court was the most frequent reason for trial delay. While it is clear that such overcrowding weighs against the state "since the ultimate responsibility for such circumstances must rest with the government rather than

with the defendant," 407 U.S. at 531, 92 S.Ct. at 2192, this factor alone is not a sufficient reason to impose a uniform six month speedy trial rule. The district court was required to balance the deplorable condition of court congestion against other factors present in the various individual cases.

██ As to the third *Barker* factor, whether the defendant has asserted his right, the district court's order requires the state to bring an accused to trial only after he has made a demand. In this regard, the order embodies the demand waiver rule which was repudiated by the Supreme Court in *Barker*. Under the district court order, a defendant who does not demand a trial can be tried at the state's dilatory convenience and will not be entitled to relief, regardless of how unreasonable the pretrial delay may be.

██ Finally, and perhaps crucially, the district court did not consider whether an individual defendant's period of pretrial confinement prejudices any of the three purposes of the Sixth Amendment: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532, 92 S.Ct. at 2193; United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); Smith v. Hooey, 393 U.S. 374, 377–378, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). It reasoned that since under its order it did not dismiss the indictments of defendants not tried within 45 days of their demand, it need not consider whether the defense would be impaired. This line of reasoning is no substitute for the ad hoc balancing mandated by *Barker*. It is clear that prejudice to the defense goes to whether the Sixth Amendment right to speedy trial has been abridged, not to the type of remedy available to a defendant. For example, absent a specific showing of prejudice to the defense, a relatively long period of delay may be excused. In *Barker* the defendant was denied relief

after a five-year delay, in part because his defense was not prejudiced by the delay.

 This is not the proper business of the federal courts, which have no supervisory authority over the state courts and have no power to establish rules of practice for the state courts. Rather, the federal courts must limit their inquiry to the specific facts regarding a complaining petitioner. Relief from unconstitutional delays in criminal trials is not available in wholesale lots. Whether an individual has been denied his right to a speedy trial must be determined ad hoc on a case-by-case basis.