Homer Aki **MATHIS**, on behalf of himself and on behalf of all others similarly situated, Plaintiffs,

v.

Thomas J. **BESS**, as Supervising Court Stenographer, Criminal Court, New York City, Harold J. Reynolds, as Clerk of the Appellate Division of the First Judicial Department of New York; Phillip L. Weinstein, as Attorney-in-Charge, the Criminal Appeals Bureau of the Legal Aid Society of New York; Geoffrey Q. Ralls, as Administrator of the Assigned Counsel Plan; Thomas Coughlin, III as Commissioner of the New York State Department of Correctional Services; Albert M. Rosenblatt, as the Chief Administrative Judge of the State of New York; Donald Oshinsky; Linda Pazzani; Anna L. Bolgier; Joel Machlis; Rose Dunn; Anthony Moscato; Sanford Aranow; Michael Frankel; Peter F. Anderson; and Ruben S. Schofield, Defendants.

No. 85 Civ. 4426 (GLG).

United States District Court, S.D. New York.

Aug. 10, 1988.

Robert Abrams, Atty. Gen., New York City (Melissa Saren, Asst. Atty. Gen., of counsel), for State defendants.

Ross & Hardies, New York City (Peter I. Livingston, of counsel), for defendant Phillip L. Weinstein, as Atty.-in-Charge, The Criminal Appeals Bureau of the Legal Aid Society of New York.

Davis Polk. & Wardwell, New York City (Charles E.F. Millard, Jr., Richard Goldstein, of counsel), for plaintiffs.

## OPINION

GOETTEL, District Judge.

Plaintiff Homer Mathis, a New York state prisoner, commenced a *pro se* civil rights action, 42 U.S.C. § 1983, alleging his constitutional rights were violated as a result of the delays attendant to the appeal of his conviction for first degree robbery. He sought injunctive and declaratory relief, as well as damages. This case is now before the court upon the plaintiff's motion for class certification with respect to the claims for equitable relief, Fed.R.Civ.P. 23, and upon one defendant's motion to dismiss or, in the alternative, for summary judgment, as to it.

For the reasons set forth below, summary judgment is granted and the complaint is dismissed as to defendant Weinstein and plaintiff's motion for class certification is denied.

## BACKGROUND

Plaintiff Mathis was found guilty on May 28, 1981, after a jury trial in New York County of four counts of robbery in the first degree, N.Y. Penal Law § 160.15. On October 5, 1981, he was sentenced as a predicate felon to four concurrent indeterminate terms of ten to twenty years. During the trial, plaintiff was represented by appointed counsel and The Legal Aid Society ("Legal Aid") represented a co-defendant.

On October 13, 1981, plaintiff *pro se* filed a notice of appeal. On November 17, 1981, the Appellate Division, 1st Dept., granted his application for leave to appeal as a poor person and appointed The Legal Aid Society as plaintiff's appellate counsel. The Appellate Division ordered the court stenographers to produce plaintiff's trial transcript and file it with the Clerk of the Appellate

Division within twenty days of receipt of the order, N.Y. Crim.Proc.Law § 460.70,[1] and ordered Legal Aid to perfect plaintiff Mathis' appeal within 120 days from the date of the filing of the record.

On January 4, 1982, The Legal Aid Society wrote to plaintiff acknowledging receipt of the assignment of his appellate case. Legal Aid also explained that "[o]nce we obtain the entire record, we shall assign one of our staff attorneys to examine the record, research the law, and prepare a brief." Millard Affirmation, Exh. 1.[2]

On or about March 2, 1983, one year and three months after it was due, the stenographic transcript of plaintiff's trial was filed with the Clerk of the Appellate Division, 1st Dept. The record was forwarded to Legal Aid by the Clerk on March 30, 1983. Soon thereafter, Legal Aid discovered the conflict of interest in that it had represented Mathis' co-defendant at trial. Consequently, on April 7, 1983, Legal Aid applied to be relieved as appellate counsel. On May 17, 1983, Legal Aid's application was granted and Peter Anderson, Esq., was appointed from a list of lawyers who handle appeals of indigents for a fee, known as the 18–B panel. The transcript was forwarded to Anderson on or about May 31, 1983. Approximately five months later, plaintiff received a letter from Anderson in which he stated that he would be filing an appeal with the court within the next three months.

Anderson never filed a brief on behalf of plaintiff and twice during the period of his representation of plaintiff, Mathis was informed by the Appellate Division his case was to be placed on the dismissal calendar. Plaintiff corresponded with the Appellate Division and successfully prevented his appeal from being dismissed. In response to plaintiff's request of May 24, 1984, the Appellate Division relieved Anderson as appellate counsel.

On or about July 5, 1984, the Appellate Division appointed Ruben Schofield, Esq., from the 18–B panel as counsel. Schofield was directed to perfect the appeal within 120 from the time he received the record, which was about August 23, 1984.

Schofield filed a brief on November 28, 1986, twenty-seven months after receipt of the transcript. Plaintiff was given permission to file a supplemental brief *pro se* and did so on May 21, 1987. Subsequently, on August 20, 1987, the District Attorney filed an answering brief in response to both plaintiff's *pro se* and counsel Schofield's briefs.

On October 20, 1987, the Appellate Division, 1st Dept. affirmed the plaintiff's conviction without opinion. On November 20, 1987, plaintiff filed an application, which was denied on January 12, 1988, for leave to appeal to the New York Court of Appeals.

During the period plaintiff Mathis was waiting for his appeal to be perfected and decided by the state court, he commenced the instant action *pro se* on June 10, 1985. The initial defendants were the Clerk of the Appellate Division, 1st Dept., and the court stenographers. Plaintiff's *pro se* complaint, brought pursuant to 42 U.S.C. § 1983, alleged his constitutional rights to due process and equal protection were violated because of the lengthy delay in providing him with transcripts of his criminal trial, a delay he alleges is encountered only by indigent appellants, not those who can afford private counsel. On March 19, 1986, plaintiff's *pro se* motion for leave to amend the complaint to add as a defendant the Appellate Division, 1st Dept., charging the court with failure to provide him with adequate counsel for his appeal, was denied. *Mathis v. Clerk of the First–Department,*

---

1. The plaintiff maintains there is a differential rate scale for reimbursement of court stenographers in that appellants with private counsel are charged a higher rate than indigent appellants. The result, according to plaintiff and not disputed by defendants, is a built-in incentive to complete the transcripts of the non-indigent appellants first.

2. Because no individual attorney is assigned to a case until the transcript has been received by Legal Aid, other than computer-generated reminder letters, court stenographers are not pressured by Legal Aid to complete and file the transcripts. On several occasions in 1982 and 1983, however, plaintiff wrote to Legal Aid to inquire about the status of his case.

*Appellate Division*, 631 F.Supp. 232 (S.D. N.Y.1986) (court is not a person under section 1983 and justices of the court in their individual capacity cannot be sued for money damages under that section). The original defendants' cross motion for dismissal, Fed.R.Civ.P. 12(b)(6), was denied because it appeared to the court Mathis "may have a colorable claim that his due process rights were violated through the State's failure to promptly provide his trial transcript for an appeal." *Id.* at 236. In recognition of the fact that plaintiff's claims raised complex issues, which are "treacherous pleading waters" for the layman, *id.*, the court ordered appointment of counsel. Subsequently, plaintiff was assigned *pro bono* counsel.

On August 27, 1987, plaintiff also filed a petition for a writ of habeas corpus alleging the state's delay in deciding his appeal constituted a denial of due process. On September 25, 1987, the district court dismissed the petition for failure to exhaust state remedies. The Court of Appeals reversed the lower court on the grounds it was unclear whether he had in fact exhausted his state remedies, but, in any event, under the circumstances, use of the proposed writ of error *coram nobis* would have been ineffective to protect plaintiff's rights. *Mathis v. Hood*, 851 F.2d 612 (2d Cir.1988). The case was remanded "to the district court to address the merits of petitioner's due process claim and determine what relief, if any, may be available." *Id.* at 615.

Concurrent with the petition for a writ of habeas corpus, plaintiff, in the case at bar, sought leave to file an amended class action complaint, and the motion was granted on September 14, 1987. The amended putative class action complaint was filed on October 8, 1987, approximately two weeks before Mathis' conviction was affirmed by the Appellate Division on October 20, 1987.

The class action complaint seeks injunctive and declaratory relief on behalf of plaintiff Mathis and all indigent criminal appellants represented on appeal by either The Legal Aid Society, or by an attorney from the Assigned Counsel Panel, 18–B, whose appeals in the Appellate Division, 1st Dept., have not been perfected within one year after the filing of the notice of appeal or have not been decided within two years of such filing. Included in plaintiff's prayer for relief is a request that the federal court enjoin the state Department of Correctional Services, pending the decision of the appeal, from continuing to incarcerate those indigent criminal appellants whose appeals have not been perfected within one year nor decided within two years of filing of the notice of appeal. In other words, plaintiff seeks to have all class members released from prison pending the resolution of their appeals. The class action defendants include:

Thomas J. Bess, as Supervising Court Stenographer, Criminal Court, New York City;

Harold J. Reynolds, as Clerk of the Appellate Division, 1st Dept.;

Phillip L. Weinstein, as Attorney-in-Charge, Criminal Appeals Bureau of The Legal Aid Society of New York ("Legal Aid");

Geoffrey Q. Ralls, as Administrator of the Assigned Counsel Plan;

Thomas Coughlin, III, as Commissioner of the New York State Department of Correction Services; and,

Albert M. Rosenblatt, as the Chief Administrative Judge of the State of New York.

Additionally, plaintiff sought damages on his own behalf against individual court stenographers for failure to provide him with his transcripts in violation of his constitutional rights and against his appointed counsel for legal malpractice and breach of fiduciary duty. The defendants on Mathis' individual complaint are Peter F. Anderson and Ruben S. Schofield, plaintiff's appointed counsel, and individual court stenographers Donald Oshinsky, Linda Pazzani, Anna L. Bolgier, Joel Machlis, Rose Dunn, Anthony Moscato, Sanford Aranow,[3] and Michael Frankel.

---

**3.** The defendants allege defendant Aranow is   deceased and, therefore, no longer a defendant

On December 4, 1987, plaintiff moved for class certification, Fed.R.Civ.P. 23(a), 23(b)(2), with respect to his claims for equitable relief.[4] The defendants oppose plaintiff's motion for class certification and, in addition, Legal Aid argues the amended class action complaint was served on Legal Aid outside the period of statute of limitations. Accordingly, Legal Aid moves to have the class action complaint dismissed as to it or, in the alternative, summary judgment granted as to it. Fed. R.Civ.P. 12(b)(6), 56. Because additional papers, including affirmations, were submitted and considered, we treat Legal Aid's motion as one for summary judgment.

DISCUSSION

*Motion for Summary Judgment: The Legal Aid Society*

A. State Action

■ As to Legal Aid, the class action complaint alleges violations of due process, the right to be free from cruel and unusual punishment, and the right to assistance of appellate counsel, 42 U.S.C. § 1983, and seeks injunctive and declaratory relief. Defendant Legal Aid contends the claims asserted against it are time barred and moves for dismissal for failure to state a cause of action or, in the alternative, for summary judgment.

Legal Aid was relieved as appointed counsel on May 17, 1983. Section 1983 claims, which have a three year statute of limitations, *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Okure v. Owens*, 816 F.2d 45 (2d Cir.1987); N.Y. Civ.Prac.Law § 214(5), were first interposed against it in October 1987—almost 4–½ years after it was relieved as assigned counsel—in the amended class action complaint. Because the complaint was served on Legal Aid outside the statutory period for commencing the lawsuit, Legal Aid argues the claims as to it are time barred. Plaintiff counters that pursuant to Fed.R. Civ.P. 15(c), the otherwise time-barred claims against Legal Aid, relate back to the

time the original complaint was filed on June 10, 1985, and are, therefore, timely.

Initially, the court observes that under 42 U.S.C. § 1983 plaintiff incorrectly named Legal Aid as a defendant for allegedly violating his constitutional rights by not pursuing his appeal more vigorously. Plaintiff misstates both the status and the role of Legal Aid. Legal Aid, as assigned counsel, cannot be held to be a state actor or acting under color of state law. The interests of defense counsel are hostile to those of the state as prosecutor. *See Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (public defender employed and paid by state to represent indigent criminal appellant, has a duty of undivided loyalty to the client and is, therefore, an adversary of the state and is not acting under color of state law).

We hasten to point out that plaintiff's claims against Legal Aid cannot be salvaged and rendered timely by characterizing them as malpractice rather than as § 1983 claims, as the statute of limitations of 3 years remains a bar, N.Y. Civ. Prac.Law § 214(6). *See Polk*, 454 U.S. at 325, 102 S.Ct. at 453 citing *Ferri v. Ackerman*, 444 U.S. 193, 198, 100 S.Ct. 402, 406, 62 L.Ed.2d 355 (1979) (public defender may be liable for malpractice in an appropriate case under state tort law).

B. Rule 15(c)

The purpose of Fed.R.Civ.P. 15 is to facilitate a determination of claims on the merits, *Sanders v. Thrall Car Manufacturing Co.*, 582 F.Supp. 945 (S.D.N.Y. 1983), *aff'd*, 730 F.2d 910 (2d Cir.1984). In furtherance of this objective, Fed.R.Civ.P. 15(c) may be used to protect additional claims from dismissal due to the statute of limitations, *Zeeman v. U.S.*, 275 F.Supp. 235 (S.D.N.Y. 1967), *modified and remanded on other grnds.*, 395 F.2d 861 (2d Cir.1968). Provided the requirements of Rule 15(c) are met, an otherwise time-barred claim relates back to the time of the original complaint, *Blau v. Lamb*, 191 F.Supp. 906 (S.D.N.Y. 1961).

in this action. However, they have not moved to have him removed as a defendant.

4. Decision on this motion was delayed by the recusal of the trial judge and the need to reassign the case.

A threshold issue is whether the claim interposed in the amended complaint arises out of the conduct, transaction, or occurrence averred in the original complaint. If the threshold requirement is met, an amendment which, as here, changes the party against whom a claim is asserted, relates back if within the statutory period provided by law for commencing the action against the party to be added, the party 1) received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and 2) knew or should have known that, but for a mistake as to the identity of the proper party, the action would have been brought against it. Fed.R.Civ.P. 15(c). *See generally Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). The notice of the commencement of the action may be informal, but it must be received within the applicable limitations period for commencing the action. Advisory Committee's Notes to the 1966 Amendment of Fed.R.Civ.P. 15(c). The notice must be of the lawsuit, not merely the possibility of a lawsuit. Further, mere notice of the events complained of is insufficient. *Schiavone v. Fortune*, 750 F.2d 15 (3d Cir.1984), *aff'd*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986).

Mathis' original *pro se* complaint named as defendants the Clerk of the Appellate Division, 1st Dept. and certain court stenographers. In the original complaint, Mathis alleged violations of constitutional rights to due process and equal protection as a result of the failure of defendants to comply with the order of the Appellate Division, 1st Dept., to transcribe the record of plaintiff's trial and file it with the Clerk within 20 days of receipt of the order. To the extent the gravamen of the original complaint and the amended class action complaint is the uncontroverted delay in producing and filing the transcripts, the amended pleading may meet the same "conduct, transaction, or occurrences" test. The claims interposed against Legal Aid in the amended complaint arise, in part, from Legal Aid's failure to "pressure" the Clerk and stenographers to comply with the court order. Amended Cmplnt ¶ 42.

The plaintiff seeks to invoke the safety net of Rule 15(c) and argues it is applicable because Legal Aid had knowledge of the events complained of. But, plaintiff misstates the test of Rule 15(c). The plaintiff's reliance on the relation back doctrine fails because the test is whether the proposed party, within the applicable limitations period for the commencement of the action, had notice of the *lawsuit*. *Schiavone*, 477 U.S. at 31, 106 S.Ct. at 2385 (the requirement of notice within the limitations period may be arbitrary, but it is an arbitrariness imposed by the legislature and not the judicial process). No evidence has been submitted that Legal Aid received notice, formal or informal, of the instant action prior to October 1987.

Further, the notice must be such as to alert the proposed party it should investigate and collect and preserve evidence with respect to all of the foreseeable actions arising from the events complained about. 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1498 (1971). Thus, even if it were demonstrated Legal Aid had the requisite notice of the lawsuit within the 3 year statutory period, it is unlikely that the substance of the original *pro se* complaint, which was addressed to the inaction of the court stenographers and the Clerk, would have suggested to Legal Aid that, but for a mistake in identity of the party, it would have been named as a defendant for failure to exercise a "duty" to ensure compliance by the Clerk and the court stenographers with the court order. The original *pro se* complaint would not have alerted Legal Aid to the possibility of a claim that it contributed to the delay in perfecting Mathis' appeal by reason of the reassignment to an 18–B Panel attorney due to a conflict of interest.[5] *See Graboi v. Kibel*, 432 F.Supp. 572 (S.D.N.Y.1977) (in determining whether a claim should relate back for statute of limitations purposes, the inquiry should focus upon whether statements of facts in original pleading gave notice of claim sought to be added).

5. The reassignment contributed only a minimal amount to the overall delay.

Legal Aid was certainly well aware of the alleged delay attributable to the court stenographers because Legal Aid, as appointed counsel, made periodic inquiries of the Clerk as to the status of the transcripts. Yet, plaintiff, who had been represented by three different appointed counsel at the time the original complaint was filed, failed to allege or even suggest in the original complaint any wrongdoing on the part of any appointed counsel.

On these facts, it is difficult to conceive of any basis for imputing the requisite notice to Legal Aid and, accordingly, summary judgment is granted as to defendant Weinstein, Legal Aid, and the complaint is dismissed as to it.

*Class Certification*

■ Plaintiff Mathis seeks class certification with respect to five of the ten claims interposed in the amended class action complaint. Fed.R.Civ.P. 23(a), 23(b)(2), 23(c)(1). The plaintiff seeks injunctive and declaratory relief against six defendants in their official capacities for alleged violations of various state and federal constitutional rights arising out of the delays in the state appellate criminal process. Specifically, plaintiff Mathis moves for class certification and to be named class representative as to:

—The first cause of action which alleges violations of due process by defendants Bess (Supervising Court Stenographer, Criminal Court, City of New York), Ralls (Administrator of the Assigned Counsel Plan for the Appellate Division, 1st Dept.), Weinstein (Attorney-in-Charge of the Criminal Appeals Bureau of the Legal Aid Society of New York City) [6], Reynolds (Clerk of the Appellate Division, 1st Dept.), and Rosenblatt (Chief Administrative Judge of the State of New York);

—The second cause of action which alleges violations of the right to equal protection under the law, and is asserted against defendants Bess (Supervising Court Stenographer, Criminal Court, City of New York), Reynolds (Clerk of the Appellate Division, 1st Dept.), and Rosenblatt (Chief Administrative Judge of the State of New York);

—The third cause of action which alleges violations of the constitutional right to be free from cruel and unusual punishment and is interposed against defendants Bess (Supervising Court Stenographer, Criminal Court, City of New York), Ralls (Administrator of the Assigned Counsel Plan for the Appellate Division, 1st Dept.), Weinstein (Attorney-in-Charge of the Criminal Appeals Bureau of the Legal Aid Society of New York City) [7], Reynolds (Clerk of the Appellate Division, 1st Dept.), and Rosenblatt (Chief Administrative Judge of the State of New York);

—The fourth cause of action which alleges violations of the right to assistance of appellate counsel and is brought against defendants Ralls (Administrator of the Assigned Counsel Plan for the Appellate Division, 1st Dept.), Weinstein (Attorney-in-Charge of the Criminal Appeals Bureau of the Legal Aid Society of New York City) [8], Reynolds (Clerk of the Appellate Division, 1st Dept.), and Rosenblatt (Chief Administrative Judge of the State of New York); and,

—The fifth cause of action which alleges violations of the right to due process, equal protection of the law, and the right to be free from cruel and unusual punishment arising out of the incarceration of the plaintiff and putative class members during the challenged appeals process. It is interposed against defendant Coughlin in his official capacity as Commissioner of the Department of Correctional Services of the State of New York.

The plaintiff class is described as

all presently incarcerated indigent criminal appellants represented on appeal by either Legal Aid Society of New York ("Legal Aid") or by an 18–B attorney in the Appellate Division of the First Judicial Department of New York and whose appeals have either not been perfected

---

6. As discussed *supra,* the complaint is dismissed as to defendant Weinstein.

7. *See supra* n. 6.

8. *See supra* n. 6.

within one year of the filing of a notice of appeal or not been decided within two years from such filing.

Amended Cmplnt ¶ 9.

The party seeking class certification has the burden of showing that all of the prerequisites to invoking Rule 23 have been met. *DeMarco v. Edens*, 390 F.2d 836, 845 (2d Cir.1968). All four requirements of Rule 23(a) must be satisfied and, in addition, the claims must fall within one of the Rule 23(b) categories. 7a C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil § 1759 (1986). Moreover, threshold requirements for certification and maintenance of class actions include issues of standing and mootness, and they are additional prerequisites to a determination of the propriety of class certification. 7B C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil § 1785.1 (1986).

Plaintiff Mathis contends the prerequisites of Rule 23(a)[9] are satisfied by the facts of this case, and that the alleged lack of response by defendants to the delays in the appellate process makes injunctive and declaratory relief appropriate, Rule 23(b)(2)[10]. For the reasons set forth below, the court finds that neither the requirements of Rule 23(a) nor Rule 23(b)(2) have been met. Accordingly, the motion for class certification is denied.

## C. Rule 23(a)(2)

Rule 23(a)(2) requires there be questions of law or fact common to the class. Plaintiff argues there are questions of both law and fact common to the class. Specifically,

"[t]he common questions of fact in this action will focus on the proof that appellate delay occurs, that it is common, and that the Class Action Defendants are responsible for it; ... these delays are due to the individual and collective failures of the Class Action Defendants, acting in their official capacities, to take the acts necessary to reduce the delays faced by appellants. *See Amended Complaint* ¶¶ 36–54," Plntf's Memo. of Law at 16–17. As to common questions of law, the plaintiff contends "the common question of law is whether the delay violates the constitutional rights of the members of the class ... (Common to each class member is a denial of their) rights to Due Process of law and Equal Protection of the law ... they have been subjected to cruel and unusual punishment ... and have been denied the right to assistance of appellate counsel...." *Id.* at 17. All plaintiff has done, however, is to restate the allegations in the complaint and these conclusory generalizations are insufficient to meet the mandate of Rule 23(a)(2).

The defendants correctly argue that not only are there factual differences underlying each individual allegation of delay, but whether the delay rises to the level of a constitutional violation is a separate consideration and one which must be determined on a case-by-case basis. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (an alleged violation of a defendant's constitutional right to a speedy trial cannot be established by rigid rules; rather, they are to be considered by the courts on an *ad hoc* basis);[11] *Ralls v. Manson*, 503 F.2d

---

**9.** Rule 23(a). Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**10.** (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition (2) the party opposing the class

has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

**11.** The four factors to be considered under *Barker* are 1) the length of the delay, 2) the reason for the delay, 3) whether and how a defendant asserts his right to a speedy trial, and 4) any prejudice to the defendant as a result of the delay. These factors are to be considered together with such other circumstances as may be relevant. *Barker*, 407 U.S. at 531–33, 92 S.Ct. at 2192–93.

491 (2d Cir.1974) (totality of facts and circumstances are examined to determine whether appellate delay presented a denial of constitutional rights sufficient to warrant federal intervention); *Wallace v. Kern*, 499 F.2d 1345 (2d Cir.1974) (denial of right to a speedy trial must be determined on a case-by-case basis as relief from unconstitutional delays in criminal trials is not available in "wholesale lots"); *Wheeler v. Kelly*, 639 F.Supp. 1374 (E.D.N.Y. 1986), *aff'd*, 811 F.2d 133 (2d Cir.1987) (use *Barker* analysis to determine whether post-conviction delay constitutes a denial of due process); *Harris v. Kuhlman*, 601 F.Supp. 987 (E.D.N.Y. 1985) (the *Barker* analysis is applicable to claims for relief due to delays in appeals).

While not conceding the applicability of a *Barker* analysis, plaintiff contends such an analysis demonstrates that the commonality requirement of Rule 23(a)(2) is met by the instant facts. But, this ignores the fact *Barker* expressly provides that an analysis of whether any given delay rises to the level of a constitutional violation is to be done on a case-by-case basis. *Wallace v. Kern*, 499 F.2d 1345 (2d Cir.1974) (*Barker* expressly rejects the notion that the right to a speedy trial can be quantified into a specific time period). *Barker* specifically anticipates that a "delay" may constitute a constitutional violation in one case but not in another. Thus, under *Barker* questions of fact or law as to appellate delays remain individual considerations. *Wallace*, 499 F.2d at 1350 (2d Cir.1974) (absent a specific showing of prejudice to the defense, a relatively long period of delay may not be transformed into a constitutional violation).

Plaintiff defined the class to include all "presently incarcerated indigent criminal appellants ... whose appeals have either not been perfected within one year of the filing of a notice of appeal or not been decided within two years from such filing." Amended Cmplnt ¶ 9. Plaintiff then uses his own definition as the basis for his contention there is the requisite question of fact common to the class—"[t]he length of delay is, by definition, one year in the briefing or two years in the hearing of appeals."

Plntf's Reply Memo. of Law at 12. But, plaintiff confuses a fact common to the class, a delay of the requisite minimum time necessary to be included in the class and used to define the class, with a question of fact common to the class. Moreover, *Barker* expressly denounced rigid, mechanistic approaches to the significance of a time period. *Barker*, 407 U.S. at 522–530, 92 S.Ct. at 2187–91.

Plaintiff continues his *Barker* analysis stating "[t]he reason for the delay will most often be problems with stenographers or inaction of appointed counsel since, by definition, all class members are represented by appointed counsel." Plntf's Reply Memo. of Law at 11. But, plaintiff has merely stated in an overly broad way the basis for naming the alleged *source* of the delay as the defendants in the instant action. Moreover, the sources are mutually exclusive. The appointed counsel, who usually were not the trial counsel, cannot start working on the appeal until the transcript is prepared. And once the stenographer has prepared the transcript, he has no involvement in the length of time it takes counsel to prepare the brief.

Plaintiff merely restates the class definition and offers it up as a common question of fact to the class, but the class characteristics are ones the putative class members must share by definition. Plaintiff has not, as he must under *Barker* and Rule 23(a)(2), addressed the question of common facts or law beyond the characteristics of the class.

The final *Barker* factor is a determination of any prejudice to the plaintiff as a consequence of the delay. Plaintiff Mathis' contention "the prejudice to the plaintiffs is the delay itself," Plntf's Reply Memo. of Law at 12, is contrary to the very essence of *Barker* and its progeny that "delay" is not *per se* prejudicial, that a "delay" standing alone is insufficient to create a constitutional violation.

Finally, plaintiff's argument that Rule 23(a)(2) is satisfied because "[p]laintiff does not seek individualized relief", Plntf's Reply Memo. of Law at 12, is not dispositive of a determination under Rule 23(a)(2)

which requires that in order for a class to be certified there must be common questions of law or fact. The fact plaintiff seeks injunctive and declaratory relief which would bind the entire class does not obviate the necessity of a determination of whether each putative class member is entitled to any relief as a class. When the propriety of injunctive or declaratory relief turns on determinations made with respect to each individual class member, common questions may not be found. 7A, C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil § 1763 (1986). While Mathis kept urging his counsel to file a brief, many appellants delay the process by demanding changes in the proposed brief or by asking for additional time to file their own brief.[12]

We note plaintiff's reliance on the fact a class was certified in *Isrile v. Benjamin*, No. 74 Civ. 4710 (WCC) and conclude *Isrile* is readily distinguishable. In *Isrile* the class members, as here, complained of delays in the appellate process, but limited the challenge to the delay in producing the transcripts. Further, the *Isrile* defendants were limited to the court stenographers and those administrative personnel, both judicial and non-judicial, who were charged with supervising the court stenographers and the transcription process.[13] Plaintiff Mathis, on the other hand, attempts too much. He challenges nearly the entire criminal appellate process and names "the system" as defendants. His broad sweep is mutually exclusive with finding the commonality necessary under Rule 23(a)(2).

### D. Rule 23(a)(3)

Rule 23(a)(3) requires the plaintiff's claims be typical of the claims of the class. Mathis argues the typicality requirement is met because "every class member suffers delay also attributable to one or more of the other Class Action Defendants. (His) claims are typical because he suffered delay due to stenographers, Legal Aid, the 18–B attorneys and the Clerk's office." Plntf's Memo. of Law at 18. In other words, plaintiff seems to contend his claims must be typical of those of the putative class because he alleges he experienced delay at the hands of each of the defendants. Plaintiff dismisses the defendants' contention that his claims are not typical because they are moot, his appeal having been decided. The court, for the reasons discussed below, agrees that mootness is a critical obstacle to class certification. At this point in the proceedings, plaintiff cannot fairly characterize his claims for injunctive and declaratory relief as typical because he does not have any "live" claims to assert.

### E. Mootness

The case or controversy requirement of Art. III of the federal constitution is usually satisfied if the named plaintiff in a class action has been or is in immediate danger of being injured by the defendant's challenged conduct, has a personal stake in the outcome of the litigation, and there is a live controversy for which relief may be fashioned by the court. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *O'Shea v. Littleton*, 414 U.S. 488, 493–96, 94 S.Ct. 669, 674–76, 38 L.Ed.2d 674 (1974). Particularly germane to the issue of class certification in the instant case, is that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by a continuing, present adverse effect." *O'Shea*, 414 U.S. at 495–96, 94 S.Ct. at 676.

---

12. Mathis did file a *pro se* supplemental brief. The papers do not make clear exactly how much time this added to the total delay, but it appears to be slight.

13. *Isrile v. Benjamin* was concerned with the elimination of the backlog of orders for the production of transcripts. A schedule for eliminating the backlog in an eighteen month period was agreed to. At the end of the 18 month period, and upon a showing of compliance, the complaint was dismissed by stipulation. The preparation of plaintiff Mathis' transcript exceeded the time requirements of the consent order in *Isrile* and, consequently, we do not foreclose the possibility of an appropriate class action limited to the production of indigent criminal appellants' transcripts.

In class actions, mootness and standing can be interrelated. In fact, mootness has been defined as " 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' " *United States Parole Commission v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980) quoting Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1364 (1973). Thus, if the named plaintiff's claims for equitable relief are rendered moot prior to the completion of the class action, he can no longer claim to have standing as a class member because he does not have a personal stake in the outcome of the litigation.

As a general rule, a class action cannot be maintained unless there is a named plaintiff with a live controversy both at the time the complaint is filed and at the time the class is certified. *Swan v. Stoneman*, 635 F.2d 97, 102 n. 6 (2d Cir.1980). Otherwise, the action should be dismissed. *McKinnon v. Talladega Co., Ala.*, 745 F.2d 1360, 1363 (11th Cir.1984) citing *Board of School Commissioners v. Jacobs*, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975) and *Dudley v. Stewart*, 724 F.2d 1493, 1494 (11th Cir.1984); *Bradley v. Housing Authority of Kansas City, Mo.*, 512 F.2d 626, 628 (8th Cir.1975); *see generally* 7B C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil § 1785.1 (1986). The relation back doctrine, however, is the basis of one of the narrow exceptions to this general rule. *United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *White v. Mathews*, 559 F.2d 852 (2d Cir.1977), *cert. denied sub. nom. Califano v. White*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). The "relation back" exception provides for class certification in some circumstances, even though the named plaintiff's claim is moot prior to certification. Plaintiff Mathis, in reliance on *White*, argues the relation back exception should be applied to the instant case and, thus, class certification should be granted and plaintiff Mathis named as the class representative. For the reasons discussed below, the court concludes the instant case does not meet the requirements of the relation back exception.

Despite the mootness of the named plaintiff's claim prior to class certification, a class action may be certified and relate back to the time the motion for class certification was made, if the reality of the claim is that it is "capable of repetition, but evading review." *Gerstein*, 420 U.S. 103, 95 S.Ct. 854; *Sosna*, 419 U.S. 393, 95 S.Ct. 553. Of particular interest is whether the defendant could purposefully moot the plaintiff's claim subsequent to the class action complaint being filed, *White*, 559 F.2d at 857, or the claim is so transitory in nature that the district court cannot reasonably be expected to rule on the motion for class certification before the expiration of the named plaintiff's claim, *Foster v. Center Township of LaPorte County*, 798 F.2d 237, 245 (7th Cir.1986).

Plaintiff's reliance on *White* is misplaced as there are significant factual differences. Plaintiff White filed a class action complaint in January 1975 seeking injunctive and declaratory relief for allegedly unreasonable delays in administrative hearings on entitlement to Social Security disability benefits. In March 1975, White moved for class certification and, shortly thereafter, in April 1975, the administrative hearing he had requested was held. Although the named plaintiff's claim was moot, in July 1975 the district court granted class certification and allowed it to relate back to the time the motion for class certification was filed and White's claim was "live". Plaintiff Mathis, however, moved for class certification on December 4, 1987, approximately 7 weeks *after* his claims for equitable relief were rendered moot by the affirmance of his conviction.

On appeal, the *White* Court of Appeals recognized that defendants could avoid judicial scrutiny by granting plaintiffs' requests after they have moved for class certification, but before the motion is decid-

ed. The court cautioned that "we must take notice of the 'reality' of that possibility". *White*, 559 F.2d at 857. It is inconceivable that claims such as those asserted by Mathis could be purposefully rendered moot by the defendants, and, in any event, that is the relief sought.

Plaintiff Mathis cannot, nor does he, allege the instant claims are so transitory in nature that they will evade review because the district court cannot reasonably be expected to rule on the motion for class certification before the expiration of the named plaintiff's claims. *Foster*, 798 F.2d at 245 citing *Gerstein*, 420 U.S. at 110 n. 11, 95 S.Ct. at 861 n. 11 (pretrial detention without a probable cause hearing is by nature temporary and named plaintiffs were probably not in custody when the district court certified the class). We note the appellate process cannot reasonably be described as "temporary in nature". While we are not unaware of the difficulty a *pro se* plaintiff would have encountered in filing a class action complaint and moving for class certification, we cannot overlook the fact plaintiff Mathis' amended class action complaint was filed two years and four months after his original complaint was filed, and the motion for class certification was not even before these court at the time Mathis' conviction was affirmed. Thus, by reason of plaintiff's own delays, this court was not allowed *any* time prior to plaintiff's claims becoming moot to render a decision on the motion for class certification.

It is the conclusion of the court that the concerns which underlie the relation back doctrine are not present in the case at bar and it is, therefore, not applicable.

**F. Rule 23(a)(4)**

Rule 23(a)(4) requires that the named plaintiff fairly and adequately protect the interests of the class. The court questions the genuine interest of a plaintiff in maintaining an equitable action in which he no longer has a stake, and which did not prejudice him in the conventional sense since his conviction was ultimately affirmed. A plaintiff whose claims are moot can no longer claim to be a class member and cannot be deemed an adequate representative of the class. 7A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil § 1761 (1986). While he may still have viable damage claims, his pursuit of them against defendants who are mostly different from the class action defendants is an additional reason why he cannot represent the class.

Plaintiff's contention that Mathis' stake in the class action litigation is somehow "transferable" from his individual damage claims is ill-conceived. Plaintiff, even with the most vigorous pursuit of the equitable claims, cannot receive a benefit because they are moot as to him. Only the damage claims hold out the promise of any remedy for him from the alleged wrongs. Thus, absent unlimited resources, there is an inherent tension, if not conflict, between the plaintiff and the class. One is an adequate class representative because one's interests are consistent with those of the class, not because some of the underlying facts may be shared. *Cf. McKinnon v. Talladega Co., Ala.*, 745 F.2d 1360, 1364 (11th Cir. 1984) (for purposes of class certification, case or controversy requirement is met by named class action plaintiff whose class action damage claims survived after his class action equitable claims became moot).

We have considered plaintiff's other arguments as to the purported satisfaction of the requirements of Rule 23(a) and find them to be without merit.

**G. Rule 23(b)(2)**

Although the motion to certify the instant class action complaint is denied for failure to meet, as it must, all four prongs of Rule 23(a) and for reasons of mootness, it fails as well under Rule 23(b)(2). It is true, as plaintiff contends, that Rule 23(b)(2) is particularly well-suited to the type of claims asserted and the equitable relief sought in the instant action. *See* Advisory Committee Notes to 1966 Amendments to Rule 23.

We question, however, whether plaintiff has met his burden of showing the defendants have acted or refused to act on grounds generally applicable to the class.

We note with interest the recent announcement of a statewide Public Appellate Defender Plan to provide representation to certain indigent defendants in the appellate courts. Livingston Affirmation, Exh. E. As reported by the New York Law Journal, Feb. 10, 1988, at 1, col. 2, the Plan was developed in response to a backlog of cases generated by conflicts of interest which prevented Legal Aid or other public defenders from representing certain defendants on appeal, and in response to the increasing unavailability of appointed appellate counsel. Implementation of the Plan has already begun in the Appellate Division, 1st Dept. The Plan attorneys are to be paid $40.00 an hour, with no reduction for out-of-court work. Unlike the existing 18–B program, the Plan's attorneys would be permanently available to take all appropriate cases. In order to guarantee ethical standards and responsiveness to all parties, the Plan is to be supervised by trustees. Moreover, in the fall of 1986, prior to the formation of the Public Appellate Defender Plan, the state courts established the Indigent Criminal Appeals Management Program (ICAMP) to expedite criminal appeals, Manhattan Lawyer, June 28–July 4, 1988, at 1, col. 2.

The court is compelled to comment on the injunctive relief requested for those whose appeals have not been perfected within one year nor decided within two years of the filing of the notice of appeal. The plaintiff seeks an injunction requiring that the class members be released pending the resolution of their appeals. Prayer for Relief ¶ 5. While the relief requested may provide an incentive on the part of the State to ensure appeals are perfected on a more timely basis, it also creates an incentive on the part of the appellant to not insist on an expeditious appeal. The reward for a delay, such as that complained of in the case at bar, is freedom. Arguably, assigned counsel serves his client best by doing nothing.

This court is not suggesting severe problems do not exist with respect to delays in the state criminal appellate process. In light of the fundamental rule of law that absent constitutional violations, a state is free to conduct and remedy any alleged defects in its state court procedures without intrusion by a federal court, we would be particularly reticent to grant the extensive equitable relief requested by plaintiff. *See Wallace v. Kern*, 499 F.2d 1345 (2d Cir.1974) (federal courts have no supervisory authority over the state courts and no power to establish rules of practice for the state courts); *Wallace v. Kern*, 481 F.2d 621, 622 (2d Cir.1973) (with respect to orders directed at court personnel, a federal court, under principles of comity, has no power to intervene in the internal procedures of the state courts). We agree with the Court of Appeals that while the delay experienced by plaintiff Mathis is shocking, it is not unusual, *Mathis v. Hood*, 851 F.2d 612, 613 (2d Cir.1988). Further, "[w]e are sympathetic to the problems associated with processing the staggering number of indigent appeals in the state system. We are confident the state courts are fully aware of the situation and of the measures required to alleviate the situation." *Id.* at 615.

We too are sympathetic to state appellate courts because of the large number of indigent criminal appeals. We observe, however, that this problem is partly of the state's own making. Under state procedures a defendant can strike a plea bargain, enter a guilty plea, and then appeal his conviction! Federal procedures do not countenance such a dreadful waste of judicial resources. As indicated earlier, plaintiff's assault on "the system" is too broad and involves disparate considerations and parties. The court reporters are clearly state actors but the assigned counsel are clearly not, *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). This is not to say that the state appellate courts could not better regulate the performance of assigned counsel. Rather than having calendar calls threatening to dismiss appeals not perfected by assigned counsel, they should be having calendar calls threatening to replace assigned counsel without payment of any fees where they have been unduly derelict. Indeed, any 18–B attorney who is chastised

in this fashion more than once should be summarily removed from the 18–B Panel. While there may be an effective class action residing within the sweeping allegations of this class complaint, this plaintiff is not the appropriate person to bring them and this complaint attacks too many evils in too sweeping a fashion.

For the foregoing reasons, the plaintiff's motion for class certification is denied.

In conclusion, the complaint is dismissed as to defendant Weinstein, and plaintiff's motion for class certification is denied.

SO ORDERED.