Lyle R. GOETZ, individually and on behalf of all others similarly situated, Plaintiff,

v.

The Honorable Matthew CROSSON, in his official capacity of chief administrator of the courts of New York, the Honorable John R. King, in his official capacity of Acting Supreme Court Justice, the Honorable Judith A. Hillery, in her official capacity of Acting Supreme Court Justice, and Dr. Richard C. Surles, in his official capacity of Commissioner of the New York State Office of Mental Health, Defendants.

No. 88 Civ. 9134 (GLG).

United States District Court, S.D. New York.

Jan. 12, 1990.

Mental Disability Law Clinic, Touro College, Jacob D. Fuchsberg Law Center (William M. Brooks, of counsel), Huntington, N.Y., for plaintiff and proposed intervenors.

Robert Abrams, Atty. Gen. (Robert L. Schonfeld and Yolanda Pizarro, of counsel), New York City, for defendants.

## OPINION

GOETTEL, District Judge:

This action challenges the procedures by which an individual may be involuntarily committed to a psychiatric hospital in Dutchess County. The plaintiff alleges that the current practices of the Dutchess County Supreme Court violate the Due Process Clause of the Fourteenth Amendment by denying the involuntary committee access to psychiatric or other expert assistance at civil commitment or retention proceedings. The plaintiff further alleges that the failure to permit the committee to assert the fifth amendment privilege against self-incrimination during examination by a non-treating psychiatrist further violates the Due Process Clause. The plaintiff seeks to have his action certified pursuant to Fed.R.Civ.P. 23 as a class action seeking a declaration that an individual facing retention has the right to the appointment of a state-funded psychiatrist or other appropriate expert who would be available to testify on the patient's behalf if his clinical condition warrants such testimony and otherwise assist in the preparation and presentation of the patient's case. He further seeks to certify a second class to obtain a declaration that the patient may not be compelled to submit to psychiatric examinations conducted by a non-treating psychiatrist who may then testify adversely at the patient's retention proceeding.

The defendants have cross-moved to dismiss the action claiming that it is not ripe for adjudication and that the plaintiff's fifth amendment claim fails to state a claim upon which relief may be granted.

## I. CIVIL COMMITMENT

Pursuant to New York Mental Hygiene Law, the State of New York may involuntarily hospitalize an individual for up to sixty days upon the signature of two physicians. N.Y.Mental Hyg.Law § 9.27(a) (1988). During this initial sixty-day period, an involuntarily hospitalized patient may request a hearing, known as a retention hearing, to contest his confinement. N.Y. Mental Hyg.Law § 9.31(a) (1988). If, within the sixty-day period, the State proves that a patient satisfies the criteria for involuntary hospitalization, the State may confine such individual for up to sixty days from the date of the patient's admission to a psychiatric facility or thirty days from the date of an order denying the application

for the patient's release, whichever is longer. N.Y.Mental Hyg.Law § 9.33(a) (1988).

Once this time period has expired, the director of the facility in which the patient is confined must apply for an order of retention if the facility wishes to further hospitalize the patient. A facility must also apply for an order of retention if it wishes to retain beyond a sixty-day period an involuntary patient who has not previously challenged judicially his initial commitment. N.Y.Mental Hyg.Law § 9.33(b) (1988). A patient for whom a facility has sought an order of retention may request a court hearing to challenge his confinement. N.Y.Mental Hyg.Law § 9.33(a) (1988). If the court determines that a patient satisfies the criteria for involuntary hospitalization and signs an order of retention pursuant to N.Y.Mental Hyg.Law § 9.33, the patient may request a rehearing and review pursuant to N.Y.Mental Hyg.Law § 9.35 (1988).

## II. FACTS

### A. *Lyle Goetz*

The plaintiff, Lyle Goetz, was involuntarily committed to the Harlem Valley Psychiatric Center ("HVPC") on or about March 21, 1987 and has remained there pursuant to an order of retention that expired on February 6, 1989. On February 2, 1989, at a retention hearing held in New York State Supreme Court, Dutchess County, Acting Supreme Court Justice Hillery ordered the plaintiff confined to the HVPC

for a period not to exceed twenty-four months.[1] Because this hearing was conducted without notice to the plaintiff's attorney, upon motion of plaintiff's counsel Justice Hillery vacated the order of retention on March 16, 1989 and recused herself from further proceedings on the matter. Mr. Goetz's retention hearing was then assigned to Acting Supreme Court Justice King and placed on the calendar for March 23, 1989. Justice King also recused himself.[2] Subsequently, Mr. Goetz's retention proceeding was assigned to Supreme Court Justice Ralph Beisner. In June 1989, the plaintiff moved before Justice Beisner for the appointment of a psychiatrist pursuant to the fourteenth amendment and specifically requested Dr. Lawrence Siegel. The state opposed the motion but did not object to the appointment of a psychiatrist under section 35 of the Judiciary Law.[3] Pursuant to section 35, Justice Beisner appointed Dr. Siegel. Dr. Siegel declined appointment and the court subsequently appointed Dr. Werner Cohn. Dr. Cohn examined Mr. Goetz and testified at Mr. Goetz's retention hearing in August 1989. He was called, however, as a witness for the hospital and was cross-examined by Mr. Goetz's attorney. At the conclusion of the hearing, Justice Beisner ordered Mr. Goetz retained.

### B. *Mark Cans*

In May 1989, the court received a motion by Mark Cans to intervene and serve as class representative. Mr. Cans has been

---

1. Defendants Hillery and King are both County Court Judges of Dutchess County and both serve as Acting Supreme Court Justices. The plaintiff contends that Justice Hillery presides over approximately 50 percent of the retention proceedings conducted in Dutchess County and that Justice King presides over the remaining 50 percent.

2. Justice King recused himself because, *inter alia,* he had been asked to serve as a witness in a civil suit in which Mr. Goetz's attorney was a party.

3. Judiciary Law § 35 permits a court "to appoint no more than two psychiatrists, certified psychologists or physicians to examine and testify at the hearing upon the condition of such person." N.Y.Jud.Law § 35(3) (Supp.1990). Section 35 provides for compensation by the

state in an amount not to exceed $200.00. *Id.* This section has become the focus of the plaintiff's complaint. The plaintiff challenges not only the court's reluctance to appoint psychiatrists under this section, but also the effectiveness of the statute itself. In essence, the plaintiff argues that the $200.00 compensation limitation severely limits the availability of expert witnesses willing to serve on the section 35 panel. Moreover, the plaintiff argues that once appointed under section 35, the psychiatrist is permitted to testify on behalf of either the patient or the facility seeking to retain the patient. Thus, the plaintiff argues, the patient is denied the right to an independent psychiatrist who is available to testify only on the patient's behalf in violation of his constitutional rights. Due to the posture of the present motions, we do not reach the merits of the plaintiff's claims at this juncture.

confined involuntarily in the HVPC since approximately May 27, 1987. Mr. Cans' order of retention expired on June 17, 1989. As Mr. Cans did not wish to be further involuntarily retained, the HVPC commenced a retention hearing. Both defendants Hillary and King recused themselves and the matter was assigned to Justice Beisner. Mr. Cans moved for the appointment of a psychiatric expert pursuant to the fourteenth amendment. The state opposed Mr. Cans' motion but did not object to appointment pursuant to section 35. Justice Beisner appointed Dr. Lawrence Siegel pursuant to section 35 of the Judiciary Law. Dr. Siegel declined the appointment and Dr. Cohn was appointed. Dr. Cohn also declined the appointment and indicated an intention to do so in any case in which plaintiff's counsel herein represents the patient. The application for further retention of Mr. Cans remains *sub judice* in Supreme Court, Dutchess County.

### C. *Anna Selletti*

In August 1989, Anna Selletti moved to intervene and serve as class representative. Ms. Selletti is an involuntarily retained psychiatric patient at the HVPC whose order of retention expired on September 10, 1989. Ms. Selletti's retention hearing is currently pending before Justice Beisner. Presumably because of the setbacks experienced by the other parties to this action, she has not requested appointment of an independent psychiatrist.

### III. INTERVENTION

■ Initially, we consider the motions to intervene made by Mark Cans and Anna Selletti. Under Fed.R.Civ.P. 24(b), anyone may be permitted to intervene, upon timely application, "when an applicant's claim or defense and the main action have a ques-

tion of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Clearly proposed intervenors Cans and Selletti share common questions of law with the plaintiff. Indeed, the claims raised by the proposed intervenors are identical to those raised by the plaintiff. No prejudice will result from the intervention. Consequently, the motions of Mark Cans and Anna Selletti to intervene as plaintiffs in this action is granted.[4]

### IV. JUSTICIABILITY

The defendants move to dismiss the action on the grounds that none of the plaintiffs present a justiciable case or controversy. Indeed, this case presents a text book model of the interplay of the various Article III doctrines. At the commencement of this action, Lyle Goetz's retention hearing had not yet been scheduled and he had not yet requested psychiatric assistance. Thus, the defendants moved to dismiss for lack of ripeness. When Mr. Goetz came before Justice Beisner and was appointed a psychiatrist pursuant to Judiciary Law section 35, the defendants contended that the action was moot. The defendants have made similar arguments with respect to intervenors Cans and Selletti.[5] We must consider, therefore, whether any or all of the plaintiffs present a ripe and justiciable case or controversy.

### A. *Ripeness*

Justiciability is an expansive concept which embodies, *inter alia*, the overlapping doctrines of ripeness, standing and mootness. *See Flast v. Cohen*, 392 U.S. 83, 94–97, 88 S.Ct. 1942, 1949–51, 20 L.Ed.2d 947 (1968). The ripeness doctrine

---

**4.** The question of whether either Mr. Cans or Ms. Selletti present a justiciable controversy will be considered *infra*.

**5.** In the last series of submissions on these motions, the plaintiffs' attorney indicated that, in light of both the unavailability of any psychiatrist willing to take a section 35 appointment, and the court's prior treatment of such applications, he did not move for psychiatric assistance

on behalf of Anna Selletti. He also suggested that, after Dr. Cohn's declination of the appointment, Mark Cans would no longer be vigorously pursuing appointment of an independent psychiatrist. In response to these pronouncements, counsel for the defendants argued that the action as to these parties is now moot. The mootness doctrine is examined *infra*.

requires that an action brought in federal court be "matured to a point that warrants decision." 13A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3532, at 112 (2d ed. 1984). The defendants initially contended that a plaintiff in this action could not assert a ripe case or controversy until they had requested and been denied psychiatric assistance. We note, however, that " '[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough [to prevent dismissal on ripeness grounds].' " *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974) (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923)). When the defendants sought to retain the plaintiff past the expiration of his term of commitment, and the plaintiff expressed an intention to seek the appointment of an independent psychiatrist, we think a ripe controversy was presented. At that point, the only act left to be taken was the grant or denial of the plaintiff's request. A denial of the request would likely lead to an immediate hearing and decision on future commitment. We think the plaintiff should not be required to wait until after the hearing, and risk possible re-commitment, to assert his constitutional challenge. *See Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983) ("[R]ipeness turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.' " (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967))).

■ Both plaintiffs Goetz and Cans have come before Justice Beisner at a retention hearing and requested appointment of an independent psychiatrist. Thus, both of these plaintiffs, at least at some point, presented ripe controversies.[6] Anna Selletti has not requested appointment, allegedly due to the defeats suffered by her co-plaintiffs. In light of the identical decisions rendered by Justice Beisner in *Matter of Goetz* and *Matter of Cans*, and the indication that there is currently no psychiatrist in Dutchess county who will accept section 35 appointments, at least where plaintiff's attorney is counsel, we hold that, even in the absence of a specific motion for appointment of a psychiatrist, Ms. Selletti nonetheless presents a ripe controversy. The law does not require the doing of a futile act. *Cf. Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980) (government need not pursue unavailable witness); *Munchak Corp. v. Cunningham*, 457 F.2d 721, 725 (4th Cir. 1972) ("Equity does not require the doing of a futile act as a condition to the granting of equitable relief."). All plaintiffs stand to suffer great hardship—loss of their personal liberty—were we not to act at this time. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Consequently, the plaintiffs' action is ripe for adjudication.

### B. *Mootness*

■ As the ripeness problem asserted by the defendants has been overcome, the defendants now argue that the action is moot. "[M]ootness represents a time dimension of standing, requiring that the interests originally sufficient to confer standing persist throughout the suit." 13A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3533.1, at 220 (2d ed. 1984). The mootness doctrine also ensures that a ripe cause of action remain so throughout the course of the litigation. If, at any time, the parties cease to present a live controversy, the action is moot and dismissal is appropriate. The defendants argue that because Justice Beisner has granted the plaintiffs the relief they seek—appoint-

---

6. "[R]ipeness is peculiarly a question of timing." *Buckley v. Valeo*, 424 U.S. 1, 114, 96 S.Ct. 612, 680, 46 L.Ed.2d 659 (1976) (per curiam) (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140, 95 S.Ct. 335, 356–57, 42 L.Ed.2d 320 (1974)). Consequently, the occurrence of intervening events is appropriately considered in evaluating ripeness. *Id.* at 113–14, 95 S.Ct. at 344.

ment of a section 35 psychiatrist—the action has been rendered moot.[7]

The plaintiffs argue that their action is not moot because they have not received, for all practical purposes, the relief they seek. The plaintiffs challenge the constitutionality of section 35, not only for its under-utilization, but also for its practical inadequacies. *See supra* note 3. Although plaintiff Goetz's application for appointment of a psychiatrist was granted, he nonetheless complains that he lacked sufficient opportunity to consult with and utilize the psychiatrist to his advantage. The remaining plaintiffs have not received any of the relief they seek as there is currently no psychiatrist willing to accept a section 35 appointment to these plaintiffs. The plaintiffs' allegation that the compensation allowed by section 35 is inadequate to provide the plaintiffs with effective psychiatric assistance may be established by the refusal of two psychiatrists to assist Mr. Cans, though other factors may be involved. Although we do not now rule on whether the United States Constitution requires more than the plaintiffs have received, we do not think that the plaintiffs' claims have been mooted by the appointment of a psychiatrist to examine Mr. Goetz and testify at his hearing.

■ Even were we to find that the named plaintiffs' claims had been rendered moot, we would nonetheless deny the defendants' motion. In instances where a named plaintiff's claim has become moot after a motion for class certification has been filed, the relation-back doctrine provides an exception to the mootness rule.

There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back" to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

*Sosna v. Iowa,* 419 U.S. 393, 402 n. 11, 95 S.Ct. 553, 559 n. 11, 42 L.Ed.2d 532 (1975). *Accord Jones v. Califano,* 576 F.2d 12, 22 (2d Cir.1978); *White v. Mathews,* 559 F.2d 852, 857 (2d Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *Mathis v. Bess,* 692 F.Supp. 248, 258–59 (S.D.N.Y.1988); *Jane B. v. New York City Dep't of Social Services,* 117 F.R.D. 64, 67–69 (S.D.N.Y.1987). "The *Sosna* exception ... extends to cases in which the motion for class certification was filed before the action became moot as to the named plaintiff." [8] *Jane B.,* 117 F.R.D. at 69; *accord Jones,* 576 F.2d at 22.

Of particular concern is the potential ability of the defendant to purposefully moot the named plaintiffs' claims after the class action complaint had been filed but before the class had been properly certified. *White,* 559 F.2d at 857; *Mathis,* 692 F.Supp. at 258. That concern is very real in this action. The state court's decision to appoint a psychiatrist pursuant to section 35 to both plaintiffs Goetz and Cans could be construed as an attempt to squelch a spark before it turns into a conflagration. A conclusion that the plaintiffs' claims were now moot "would mean that the [state court system] could avoid judicial scrutiny of [their] procedures by the simple expedient of granting [relief] to plaintiffs who seek, but have not yet obtained, class certification." *White,* 559 F.2d at 857.

**7.** Although Ms. Selletti has not moved for appointment of a psychiatrist, the defendants claim that her action is nonetheless mooted by her intention not to request such appointment.

**8.** Most of the above-cited cases link the relation-back doctrine to a finding of a justiciable controversy at the time the complaint and the class certification motion were filed. In this case, the original motion for class certification was filed on January 19, 1989, along with the class action complaint. Although plaintiff Goetz's claim may not have been ripe at the time of filing, it has ripened into a cognizable claim during the pendency of the class certification motion. The rationale for the relation-back doctrine is equally served by applying it under these circumstances. So long as a justiciable controversy existed some time prior to class certification, a subsequent mooting of the named plaintiff's claims will not preclude class certification.

Under these circumstances, application of the relation-back doctrine is appropriate.

Moreover, the transitory nature of the plaintiffs' claims bolsters our conclusion that their class action is not moot. As stated by the Supreme Court, "[s]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 399, 100 S.Ct. 1202, 1210, 63 L.Ed.2d 479 (1980). If, as we have concluded, the plaintiffs' claim does not ripen until he has requested psychiatric assistance, it would be virtually impossible to file a class action complaint before a determination has been rendered on that request. Once the plaintiffs' motion has been denied, he has lost the opportunity to seek prospective relief. If the motion is granted, his claim is moot. The life span of the plaintiffs' claim is simply too short to ensure judicial review before mootness mandates dismissal. Under these circumstances, the relation-back doctrine will intervene to ensure that the justiciable class action claim is heard. *See Jane B.*, 117 F.R.D. at 67–68.

Finally, the existence of many similarly situated persons who are likely to face the same "Catch–22" warrant application of the relation-back doctrine. As in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), "in this case the constant existence of a class of persons suffering the deprivation is certain. The attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in the case." *Id.* at 111, note 11, 95 S.Ct. at 861, note 11; *accord Jane B.*, 117 F.R.D. at 68.[9]

In sum, we reject the defendants' claim that the plaintiffs' action is moot. Our holding rests primarily on the conclusion that the plaintiffs have not been granted all the relief they seek. Even if their claims were satisfied, however, we would nonetheless reject the mootness challenge as the plaintiffs seek to pursue this action as representatives of a class of similarly situated persons.

## V. SELF–INCRIMINATION

■ Before evaluating the plaintiffs' motion for class certification, we first must consider the defendants' motion to dismiss, for failure to state a claim, the plaintiff's claim that due process requires that the fifth amendment privilege against self-incrimination be applied to civil commitment proceedings. The Fifth Amendment privilege, which applies to the states through the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), provides that "no person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The protection of the fifth amendment permits an individual to refuse to "answer official questions put to him in any ... proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973); *accord Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 1141, 79 L.Ed.2d 409 (1984).

The question of the application of the privilege against self-incrimination to civil commitment proceedings was recently addressed by the Supreme Court in *Allen v. Illinois*, 478 U.S. 364, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986). *Allen* involved a proceeding to determine whether a defendant who had engaged in criminal conduct was in need of involuntary psychiatric care and treatment as a "sexually dangerous person" pursuant to Illinois state law. *Id.* at 365–66, 106 S.Ct. at 2990. The threshold question posed by the Court in determining whether the Fifth Amendment privilege applied to such proceedings was whether the commitment proceedings were criminal or civil in nature. *Id.* at 368, 106 S.Ct. at 2991. To resolve this issue, the Court first examined the language of the Illinois statute that declared the proceedings to be civil. *Id.* Recognizing, however, that puni-

---

9. Although the plaintiffs' attorney is not a public defender, he is representing this class of plaintiffs *pro bono* through the Mental Disability Law Clinic at Touro College School of Law.

tive purposes may underlie a civil label, the Court analyzed the nature of the proceedings to determine if despite the stated treatment purpose of the scheme, the process was actually punitive in nature, thereby rendering it a criminal proceeding. *Id.* at 369, 106 S.Ct. at 2992. Concluding that the plaintiff failed to sustain its burden of proving that the commitment scheme had a criminal purpose, the Court concluded that the privilege against self-incrimination did not apply to the Illinois retention proceedings. *Id.* at 375, 106 S.Ct. at 2995. In so doing, the Court specifically rejected as "not good law," *id.* at 372, 106 S.Ct. at 2993, broad language in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) that "our Constitution guarantees that no person shall be 'compelled' to be a witness against himself when he is threatened with deprivation of his liberty." *Id.* at 50, 87 S.Ct. at 1455.

The petitioner in *Allen* further argued, as does the plaintiff herein, that even if the commitment proceedings at issue were not criminal, the due process guarantees of the fourteenth amendment independently require application of the privilege. In rejecting this contention, the Court declined to hold that "the Due Process Clause of its own force requires application of the privilege against self-incrimination in a noncriminal proceeding, where the privilege claimant is protected against his compelled answers in any subsequent criminal case." *Allen,* 478 U.S. at 374, 106 S.Ct. at 2994. The Due Process Clause requires certain procedural safeguards before a person may be deprived of life, liberty or property to guard against the risk of erroneous deprivation. *Mathews v. Eldridge,* 424 U.S. 319, 333–35, 96 S.Ct. 893, 901–03, 47 L.Ed.2d 18 (1976). Application of the privilege of self-incrimination to civil commitment proceedings, however, will not advance the reliability of the commitment process. *Allen,* 478 U.S. at 374, 106 S.Ct. at 2994. The fifth amendment privilege, therefore, "has no place among the procedural safeguards discussed in *Mathews v. Eldridge,* which are

designed to enhance the reliability of [the factfinding] process." *Allen,* 478 U.S. at 375, 106 S.Ct. at 2995. Accordingly, the *Allen* Court determined that the Illinois commitment proceedings "were not 'criminal' within the meaning of the Fifth Amendment to the United States Constitution, and that due process does not independently require application of the privilege." *Id.*

The Supreme Court's analysis applies equally to the civil retention proceedings at issue in this case. This issue was squarely addressed by the New York Supreme Court, Appellate Division, Second Department and we find their discussion persuasive.[10]

It is clear that facially the involuntary commitment proceedings under the Mental Hygiene Law are civil and not criminal in nature. Furthermore, upon an examination of the statutory scheme, it is equally apparent that the overall purpose of the proceedings, including the prehearing interview, is to ensure that patients receive the care and treatment that is necessary based upon their condition and is not for the purpose of exacting punishment.... Further, as is made clear in *Allen* in its rejection of *Gault,* the mere fact that statements adduced during the interview will be used at a hearing, which may result in confinement and a deprivation of liberty, will not suffice to convert the nature of the proceeding from civil to criminal.

*Ughetto v. Acrish,* 130 A.D.2d 12, 518 N.Y. S.2d 398, 403 (2d Dep't), *appeal dismissed,* 70 N.Y.2d 871, 518 N.E.2d 8, 523 N.Y.S.2d 497 (1987). We hold, therefore, that the fifth amendment privilege against self-incrimination does not apply to the civil commitment proceedings that are the subject of this litigation. Neither the fifth nor the fourteenth amendments of the United States Constitution require such application and valuable precedent leads us to conclude that its application would be inappropriate in the civil retention proceedings at issue

---

**10.** Indeed, the *Ughetto* action was commenced by the plaintiff's attorney herein and defended in part by defense counsel in this case. More-

over, *Ughetto* challenged the procedures of the Harlem Valley Psychiatric Center, the facility in which the plaintiff herein is involuntarily held.

herein. Accordingly, the defendants' motion to dismiss the plaintiff's third cause of action for failure to state a claim is granted.

## VI. CLASS CERTIFICATION [11]

■ The plaintiffs seek to certify a class of all individuals civilly committed within Dutchess County who will request retention hearings to challenge their hospitalization. Initially, because we have concluded that a ripe controversy does not arise until psychiatric assistance is requested, the class must be redefined as all individuals civilly committed within Dutchess County who will request retention hearings to challenge their hospitalization and will further request the assistance of an independent psychiatrist.

Having placed most of their eggs in the justiciability basket, the defendants do not raise serious questions as to the propriety of class certification. The sole point in opposition that we have gleaned from the defendants' papers is that the plaintiffs' claims are not typical of the class because their retention hearings have been held before Justice Beisner while the named defendants are Justices King and Hillery. The plaintiffs have established, by affidavit testimony, that defendants King and Hillery collectively presided over nearly 100 percent of the retention hearings held in Dutchess County before this litigation was commenced. The plaintiffs' hearings have been held before Justice Beisner largely because Justices King and Hillery had been named as defendants in this action. Thus, the fact that the majority of the putative class members may appear before different Justices than the plaintiffs is a condition that cannot be avoided and it does not defeat class certification.

There can be little question that the putative class satisfies the numerosity requirement of Fed.R.Civ.P. 23(a). Plaintiffs' counsel estimates that one hundred to two hundred individuals from the HVPC alone request retention hearings each year, and approximately one quarter of those patients request psychiatric assistance. *See Korn v. Franchard Corp.,* 456 F.2d 1206, 1209 (2d Cir.1972) (class of 40 sufficiently numerous); *see also Deary v. Guardian Loan Co.,* 534 F.Supp. 1178, 1190 (S.D.N.Y. 1982) (numerosity need not be demonstrated with precision). Moreover, the membership of the class is constantly changing.

> The fluid composition of the ... population is particularly well suited for status as a class because while the identity of the individuals involved may change, the nature of the harm and the basic parameters of the group affected remain constant.

*Bruce v. Christian,* 113 F.R.D. 554, 557 (S.D.N.Y.1986). Consequently, the first prong of class certification is satisfied.

The plaintiffs also have no problem meeting the commonality aspect of Rule 23(a)(2) which requires that there be common questions of law or fact shared by the putative class members. There is no question that the claims raised by the plaintiffs are common to all members of the putative class. Indeed, there are few, if any, factual issues to contend with. The question of whether the fourteenth amendment requires the appointment of a psychiatrist who is available to testify promptly on the patient's behalf if his clinical condition so warrants and otherwise assist in the preparation of the patient's case is purely a question of law and its resolution is of concern to all potential class members.

Despite the defendants' contention that the different presiding Justices render the plaintiffs' claims different from those of the class, we find that the plaintiffs' claims are typical of other class members. The typicality and commonality requirements "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim

---

11. The plaintiffs seek certification of two subclasses. The first subclass would assert the constitutional challenge to the current retention procedure and section 35 of the Judiciary Law. The second subclass would raise the fifth amendment challenge discussed above. Having dismissed the third cause of action containing that claim, we need only consider the first of the plaintiffs' proposed classes.

and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence." *General Tel. Co. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982). Despite the peculiar circumstance of differing presiding Justices as to the named plaintiffs, their claims are typical of the class members' and there is no indication that the named plaintiffs will not fairly and adequately litigate the class claims. Finally, there has been no suggestion that counsel for the class is less than able to adequately represent the class interests.

Having satisfied the requirements of Rule 23(a), we find that the proposed class, as modified, can properly be certified under Rule 23(b)(2) because "the part[ies] opposing the class [have] acted ... on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R. Civ.P. 23(b)(2). Although reliance on Rule 23(b)(2) generally requires additional reasons for obtaining certification, *Davis v. Smith,* 607 F.2d 535, 540 (2d Cir.1978), that justification is present by the threat of mootness if a class is not certified. *Alston v. Coughlin,* 109 F.R.D. 609, 612 (S.D.N.Y. 1986). As discussed above, the membership of the proposed class is transitory as patients are released, re-committed or elect to remain voluntarily. *Cf. id.* at 611–12 (class of prisoners certified because release or transfer to other prison would moot claim of overcrowding). Moreover, the possibility that the defendants could intentionally moot the named plaintiffs' claims sufficiently justifies class certification. *See supra.* "The plaintiffs' interest in averting the possibility of the action becoming moot with the concomitant interest in judicial economy, makes class certification in this case more than an empty formality...." *Id.* at 612. Were we not to certify this class, the claims asserted by the plaintiffs might be rendered moot prior to resolution. Consequently, the class is certified pursuant to Rule 23(b)(2).

## VII. CONCLUSION

In sum, the defendants' motion to dismiss the third cause of action for failure to state a claim is granted. The defendants' motion is in all other respects denied. The motions to intervene and serve as class plaintiffs by Mark Cans and Anna Selletti are granted and the plaintiffs' motion to certify a class to pursue the first and second causes of action is granted.

SO ORDERED.