**Homer Aki MATHIS on behalf of himself and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**Thomas J. BESS, as Supervising Court Stenographer, Criminal Court, New York City, et al. Defendants.**

No. 85 Civ. 4426 (RPP).

United States District Court, S.D. New York.

Aug. 26, 1991.

Davis Polk & Wardwell by Ogden N. Lewis, Steven J. Pappas, Charles E.F. Millard, Jr., by Charles E.F. Millard, Jr., New York City, for plaintiffs.

Robert Abrams, Atty. Gen., State of N.Y., Dept. of Law by Harvey Golubock, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action brought under 42 U.S.C. § 1983 by indigent appellants held in the correctional facilities of the Department of Corrections of the State of New York against the Supervising and Principal Court Stenographers of the New York City Criminal Courts and of the New York State Supreme Court, New York and Bronx Counties; the Clerk of the Appellate Division, First Department; the Administrator of the Assigned Counsel Plan for the First Department; the Commissioner of the New York State Department of Corrections; and the Chief Administrator of the Office of Court Administration for the State of New York. Plaintiffs seek class action certification for claims of undue delay in violation of their constitutional rights in the perfecting of their appeals and in decisions on these appeals. For the reasons stated below, plaintiffs' motion is granted.

## BACKGROUND

Three years ago in this action, Homer Mathis ("Mathis") moved to certify a class of:

> all presently incarcerated indigent criminal appellants represented on appeal by either Legal Aid Society of New York ("Legal Aid") or by an 18–B attorney in the Appellate Division of the First Judicial Department of New York and whose appeals have either not been perfected within one year of the filing of a notice

of appeal or not been decided within two years from such filing.

Amended Complaint filed October 8, 1987 ¶ 9. Judge Goettel denied the motion, *Mathis v. Bess*, 692 F.Supp. 248 (S.D.N.Y.1988), on three grounds: (1) plaintiff had failed to identify questions of law or fact common to the class, *id.* at 255–57, (2) since Mathis' conviction was affirmed prior to his filing the motion for class certification, his claims were moot and he could not maintain the action on behalf of the class, *id.* at 258–59, and (3) plaintiff failed to show that defendants had acted or refused to act on grounds generally applicable to the class. *Id.* at 259–60.

In an opinion dated March 28, 1991 the Court sua sponte joined as an additional class plaintiff Shamel Atkins ("Atkins"), an indigent appellant who wrote the Court asking for assistance since no brief had been filed on his appeal pending for over three years and six months. *See Mathis v. Bess*, 761 F.Supp. 1023 (S.D.N.Y.1991). On May 7, 1991 plaintiffs filed this motion for class certification. Argument was heard on August 1, 1991.

Plaintiffs have obtained case management system records of criminal appeals pending in the Appellate Division, First Department, Supreme Court of the State of New York. Pappas Aff., Exh. 1. From these records they have identified approximately 120 indigent appellants with appeals pending for which briefs have not been filed although notices of appeal were filed more than one year prior thereto. Memorandum of Law in Support of Plaintiffs' Motion for Certification of this Action as a Class Action at 4. On July 1, 1991 plaintiffs filed a Proposed Second Amended Complaint[1] naming three more class representatives in addition to Mathis and Atkins: (1) Michael Bailey ("Bailey"), (2) Gregory Barnes ("Barnes"), and (3) Markeith Boyd ("Boyd"). The newly named class representatives suffered delay in their criminal appeals as shown below:

---

**1.** Plaintiffs had previously been granted leave to file a second amended complaint.

| | Notice of Appeal Filed | Brief Filed | Appeal Decided |
|---|---|---|---|
| Shamel Atkins | 7–17–87 | 3–29–91 | 5–23–91 |
| Michael Bailey | 4–30–86 | 7–5–91 | — |
| Gregory Barnes | 1–20–87 | 7–8–91 | — |
| Markeith Boyd | 5–29–90 | — | — |

The definition of the class in the Proposed Second Amended Complaint is identical to the definition offered before Judge Goettel. *See Mathis v. Bess*, 692 F.Supp. at 254–55. The class claims in the Proposed Second Amended Complaint include violations of due process and equal protection under the fourteenth amendment, as well as denial of assistance of counsel and cruel and unusual punishment in violation of the sixth and eighth amendments, respectively.

## DISCUSSION

### 1. Mootness

■ Defendants argue that Shamel Atkins cannot represent the class because his individual claims are moot. Because the Appellate Division decided Atkins' appeal while this motion was pending, Atkins no longer falls within the class definition of "all presently incarcerated indigent criminal appellants." *See Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975) ("A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court.").

Plaintiffs urge the Court to apply the "relation-back" doctrine as an exception to the mootness rule. Ordinarily applied to permit untimely claims to be added by amendment of the pleadings, the relation-back doctrine has also been applied to permit class representation by individuals whose claims become moot after a motion for class certification is filed but before the motion is decided:

> There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

*Id.* at 402 n. 11, 95 S.Ct. at 559 n. 11 (dicta).

Two years after *Sosna* was decided, the Second Circuit applied the relation-back doctrine in a class action challenging delays by the Social Security Administration in holding hearings on disability insurance claims. *White v. Mathews*, 559 F.2d 852 (2d Cir.1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). There, the court noted that refusing to allow relation back "would mean that the SSA could avoid judicial scrutiny of its procedures by the simple expedient of granting hearings to plaintiffs who seek, but have not yet obtained, class certification." *Id.* at 857; *see also Goetz v. Crosson*, 728 F.Supp. 995, 1000–01 (S.D.N.Y.1990) (in action challenging county's procedures for involuntary psychiatric commitment, "[t]he state court's decision to appoint a psychiatrist pursuant to section 35 to both [named] plaintiffs ... could be construed as an attempt to squelch a spark before it turns into a conflagration"). Finally, the Supreme Court has indicated that relation back is appropriately applied to a class plaintiff whose claim has been rendered moot where "the constant existence of a class of persons suffering the deprivation is certain." *Gerstein v. Pugh*, 420 U.S. 103, 111 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975); *see also Jane B. by Martin v. New York City Dep't of Social Servs.*, 117 F.R.D. 64, 68 (S.D.N.Y.1987) (citing *Gerstein*).

Atkins contends that, like the claims in *White v. Mathews*, the constitutional claims he is asserting on behalf of a class of appellants are capable of evading review. The defendants, he argues, have the power

to moot the claim of any indigent appellant named as a class representative by expediting the briefing, argument and decision of that individual's appeal. The Court notes that although Michael Bailey and Gregory Barnes' appeals have been pending since 1986 and 1987, respectively, briefs were filed in their cases within two weeks after they were named as class representatives in plaintiffs' June 26, 1991 reply memorandum. It is also clear from the record that a class of indigent prisoners suffering delayed appeals has existed for some time and will continue to exist. Committee on Criminal Advocacy of the Association of the Bar of the City of New York, *The Crisis in Indigent Appeals in the First and Second Departments* (Apr. 16, 1985) ("City Bar Report"). Under these circumstances, Atkins is a proper class representative as are Bailey, Barnes and Boyd.

2. Rule 23(a)

**(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

 A party seeking class certification has the burden of showing that the prerequisites of Rule 23 have been met. *See DeMarco v. Edens*, 390 F.2d 836, 845 (2d Cir.1968). The plaintiff must demonstrate that all four requirements of Rule 23(a) are met and that the class claims fall within one of the categories enumerated in Rule 23(b). *See Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). The trial court has broad discretion to determine whether an action should be maintained as a class action. *See Society for Good Will to Retarded Children, Inc. v. Cuomo*, 737 F.2d 1239, 1243 (2d Cir. 1984).

a. *Numerosity*

 Plaintiffs' identification of at least 120 putative class members demonstrates that the proposed class is so numerous that joinder of all plaintiffs in a single action would be impractical. *See, e.g., Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972) (70 class members sufficient); *Ventura v. New York City Health & Hosp. Corp.*, 125 F.R.D. 595, 599 (S.D.N.Y.1989) (at least 100 class members); *Sharon Steel Corp v. Chase Manhattan Bank, N.A.*, 88 F.R.D. 38 (S.D.N.Y.1980) (87 class members). New members will enter the class as their unperfected appeals pass the one-year mark and undecided appeals pass the two-year mark while other members will leave the class as their appeals are decided. Joinder is also impractical within the meaning of Rule 23 when membership in the class is constantly changing. *See Goetz v. Crosson*, 728 F.Supp. 995, 1003 (S.D.N.Y.1990). Accordingly, plaintiffs meet the numerosity requirement of Rule 23(a)(1).

b. *Commonality*

Plaintiffs must also demonstrate that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Commonality "does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment." *Kamean v. Local 363, Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of Am.*, 109 F.R.D. 391, 394 (S.D.N.Y.), *appeal dismissed*, 833 F.2d 1002 (2d Cir.1986), *cert. denied*, 481 U.S. 1024, 107 S.Ct. 1911, 95 L.Ed.2d 517 (1987).

Plaintiffs allege that the question of law common to all class members is:

whether delay of over one year in the briefing of an incarcerated indigent's criminal appeal or delay of over two years in the deciding of such an appeal, that is not caused by the prisoner, *can* violate his rights to due process or equal protection.

Plaintiffs' Reply Memorandum at 14 (emphasis in original).[2]

Applying the test in *Barker v. Wingo* to appellate delay in criminal appeals would involve the ad hoc balancing of four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether and how a defendant asserted his or her rights to a speedy appeal; and (4) whether the delay unfairly prejudiced the defendant. *See Barker v. Wingo,* 407 U.S. 514, 530–32, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972). Although *Barker* involved the right to speedy trial, courts in this circuit have used these four factors in determining whether appellate delay violates due process. *Simmons v. Reynolds,* 898 F.2d 865, 868 (2d Cir.1990).

The Supreme Court in *Barker v. Wingo* acknowledged the need for some sort of line-drawing in assessing the first factor:

> The length of the delay is to some extent a triggering mechanism. *Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.* Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.

407 U.S. at 530–31, 92 S.Ct. at 2192 (emphasis added). Using this language in *Barker* as a guide, the common question of law plaintiffs have identified is simply another way of asking whether delay of over one year in the briefing of an incarcerated indigent's criminal appeal or delay of over two years in the deciding of such an appeal that is not caused by actions of the prisoner is presumptively prejudicial.

Plaintiffs justify the bright line they have selected by pointing to the deadlines established under New York Criminal Procedure Law and the rules of the Appellate Division, First Department. Appeals in criminal cases in the First Department "must be brought on for argument within 120 days after the last day in which a notice of appeal was required to be filed, unless the time to perfect the appeal is enlarged by the court or a justice thereof." N.Y.Ct.R. § 600.8(b). When an appellant in a criminal case requests poor person relief including the assignment of counsel, the court routinely enlarges the time to perfect the appeal to 120 days from the filing of the record on appeal with the court. Galdi Aff. filed Aug. 9, 1991 ¶ 3. Originally, New York Criminal Procedure Law § 460.70 required stenographers to file trial transcripts with the appellate court within 20 days of service upon the stenographer of the court's order requiring production of the transcripts. This section was amended in 1977, presumably to hasten the process, to read, "where the defendant is granted permission to proceed as a poor person by the appellate court, the court reporter shall promptly make and file" the transcripts. N.Y.Crim.Proc.Law § 460.70(1) (McKinney 1983). Using approximately 140 days as the statutory minimum, plaintiffs reason that a delay of more than triple that amount of time—one year—in the briefing of an appeal is unreasonable and presumptively prejudicial and that an additional year for opposing briefs to be submitted and the court to render a decision is presumptively unreasonable.[3] *See Jacob v. Henderson,* No. 86 Civ. 3450, 1987 WL 39951, at * 1, 1987 U.S.Dist.LEXIS 14137, at * 2 (E.D.N.Y. Feb. 20, 1987) (delay of 2.5 years in filing brief "inexcusable delay of intolerable duration").

In opinions relating to petitions for habeas corpus, delays in excess of three years in the hearing of an appeal have been found not excessive. *See Anarah v. Kriele,* No. 88 Civ. 4917, 1989 WL 19140, at

---

**2.** In the motion denied by Judge Goettel, plaintiff had framed the common question of law as "whether the delay violates the constitutional rights of the members of the class." *Mathis v. Bess,* 692 F.Supp. at 255. As framed, this question did not recognize the existence of other issues relevant to the determination of a violation of constitutional rights.

**3.** Between January 1989 and June 1990 the average time to dispose of a criminal appeal was 5.4 months from the filing of the appellant's brief and 1.7 months from the filing of the respondent's brief. Finnegan Aff. filed May 3, 1991 ¶ 2.

* 4, 1989 U.S.Dist.LEXIS 1964, at *11, 17–18 (S.D.N.Y. Mar. 2, 1989) (delay of 3.5 years in hearing appeal not excessive); *Hampton v. Kelly,* No. 88 Civ. 0528, 1988 WL 143708, at *2, 1988 U.S.Dist.LEXIS 13999, at *5 (E.D.N.Y. Nov. 29, 1988) (delay of 3.25 years in hearing appeal "not ... truly excessive when one also considers the state courts' enormous caseload"), *appeal dismissed,* 876 F.2d 890 (2d Cir.1989). These findings relate to the standard for habeas corpus relief only. Furthermore, they must be viewed in the evolving context of the law relating to due process and appellate delay. Until the more recent decisions of the Second Circuit, district courts in habeas corpus cases were confronted with the troubling prospect that a finding of a due process violation would lead to ordering the release of a prisoner convicted of a serious crime well before his sentence was served. This possibility was an obvious factor in the findings of significant appellant delays as not excessive in these cases. In *Diaz v. Henderson,* 905 F.2d 652 (2d Cir.1990), and *Simmons v. Reynolds,* 898 F.2d 865, however, the Second Circuit made clear that such a Hobson's choice need not exist and that injury from appellate delay may be "more appropriately remedied by a suit for damages" than by the "extraordinary remedy" of release from custody. *Id.* at 869; *see also Mathis v. Hood,* 937 F.2d 790, 796 (2d Cir.1991) ("[d]istrict courts may fashion appropriate relief other than immediate unconditional release"); *Diaz,* 905 F.2d at 653 (release appropriate only if delay so prejudicial as to make confinement constitutionally deficient; § 1983 is appropriate remedy for "anxiety").

Plaintiffs have heeded Judge Goettel's warning that delay standing alone is not a per se denial of due process. *See Mathis v. Bess,* 692 F.Supp. 248, 256 (S.D.N.Y.1988) ("under *Barker,* questions of fact or law as to appellate delay remain individual considerations"); *see also Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. at 2193 ("[w]e regard none of the four factors identified above as

either a necessary or sufficient condition to the finding of a deprivation of the right"). Plaintiffs concede that individualized mini-hearings would be required to address the remaining three *Barker* factors as they apply to each individual class member.

Other decisions have recognized that individualized proceedings on similar issues such as reliance or damages are not inconsistent with class certification when the bulk of the liability issues in a given class action can be determined on a classwide basis. *See Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir.1968) (reliance), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Langley v. Coughlin,* 715 F.Supp. 522, 558–59 (S.D.N.Y.) (damages), *appeal dismissed,* 888 F.2d 252 (2d Cir.1989).

In *Langley v. Coughlin,* Judge Sand adopted the Report and Recommendation of Magistrate Judge Dolinger recommending the certification of subclasses. *Id.* at 531. *Langley* involved a challenge by a class of prisoners with psychological or psychiatric disabilities to allegedly unconstitutional conditions of confinement and practices at an upstate correctional facility. Certain of the questions common to each subclass were phrased in the manner plaintiffs have chosen here, including:

— "whether certain types of alleged diagnostic and treatment failings repeatedly encountered [in the facility] *can constitute* Eighth Amendment violations"

— "whether placement of very seriously disturbed inmates on SHU *can itself amount to* an Eighth Amendment violation" [4]

— "whether the alleged conditions on SHU—including noise, smell, lack of hygiene, smoke and fire, and potentially traumatic unusual incidents—*can amount to* a violation of constitutional standards"

*Id.* at 555 (emphasis added).

█ Far fewer individualized facts are present in this action than in *Langley.* For each class member, plaintiffs must still ad-

---

4. "SHU" is the Special Housing Unit, in which prisoners are normally placed in solitary segre-

gation for disciplinary or protective custody reasons.

dress the second, third, and fourth factors in *Barker*, namely the reason for the appellate delay, whether and how the class member asserted his or her rights to a speedy appeal, and whether the delay was unfairly prejudicial. *See Barker v. Wingo*, 407 U.S. 514, 530–32, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972). Proof of the third and second factors with respect to each class member could be accomplished efficiently in a class action proceeding. While trial delay can be to a defendant's advantage since witnesses may disappear or suffer memory loss, appellate delay is normally to his disadvantage. Accordingly, a convicted defendant's filing of a notice of appeal is presumably an assertion of a right to a speedy appeal.[5] Because the class action defendants possess the official court records and supervise court stenographers and assigned counsel, they have or may readily obtain exclusive knowledge of the reasons for delay in individual cases such as extensions of time, substitution of counsel, and any contributions to the delay caused by the class member. Plaintiffs' proof on both these issues could be presented through the testimony of one or two witnesses with access to these records. *See Langley v. Coughlin*, 715 F.Supp. at 561 (finding such an approach "manageable"). Mini-hearings would then be required on the fourth *Barker* factor, the issue of prejudice.[6] Thus, even though the classwide proceedings in this action will not determine the ultimate question of whether the class members are entitled to the injunctive and declaratory relief they seek, case law and common sense support the manner in which plaintiffs are proceeding. To force plaintiffs, a class of incarcerated

individuals lacking in legal resources and possibly unaware of their rights, to litigate the issue of the extent of appellate delay separately will surely allow the crisis in indigent appeals, recognized almost twenty years ago by former Chief Judge Lumbard,[7] to persist indefinitely. The class action was devised for use precisely in these circumstances.

In addition to the common question of law plaintiffs have identified, there are common questions of fact involving whether defendants have failed adequately to supervise stenographic production of the record on appeal and to monitor the systems of assignment of counsel and the performance of assigned counsel in criminal appeals by indigents. Accordingly, plaintiffs have met the requirements of Rule 23(a)(2).

### c. *Typicality*

The named plaintiffs' claims are typical within the meaning of Rule 23(a)(3) because they arise from the same course of conduct that gives rise to the claims of the other class members and are based on the same legal theory. *See Stieberger v. Sullivan*, 738 F.Supp. 716, 731 (S.D.N.Y.1990).

### d. *Adequacy of Representation*

Rule 23(a)(4) requires that the named class representatives have qualified, experienced counsel and not have interests antagonistic to those of other members of the class. *See County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1407 (E.D.N.Y.1989) (citations omitted), *aff'd*, 907 F.2d 1295 (2d Cir.1990). Plaintiffs are represented pro bono by a large New York

---

**5.** With respect to delays on appeal as opposed to trial delay, the appellant has little interest in delay. In fact, his interest presumably lies in a speedy appellate process and a fresh record before the appellate court. Since witness availability, trial preparation, and courtroom availability are no longer factors in delay, the factors causing delay in indigent appeals—assignment and supervision of counsel, stenographic production of a record on appeal, preparation and filing of a brief, and scheduling argument—lie principally in the class action defendants' power.

**6.** In *Simmons v. Reynolds*, 708 F.Supp. 505 (E.D.N.Y.1989), *aff'd*, 898 F.2d 865 (2d Cir. 1990), the court set forth the interests in a speedy appeal to be considered in determining whether appellate delay was prejudicial: "(1) to prevent oppressive post-trial incarceration, should the appeal ultimately prove successful; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the appeal and any resulting retrial will be compromised by the passage of time." *Id.* at 510.

**7.** *See Ralls v. Manson*, 503 F.2d 491, 494 (2d Cir.1974) (Lumbard, J., concurring).

law firm with a number of attorneys experienced in criminal appeals and class action litigation and with ample resources to devote to litigating this action. There is no reason to believe the named plaintiffs are not aligned in interest with the class as a whole.

3. Rule 23(b)

■ Plaintiffs seek to certify a class under Rule 23(b)(2) which provides:

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

In order to certify a class under this subdivision, the defendant must have acted in a manner alleged to be hostile to the entire group and the relief sought must be relief that is applicable to the class as a whole. *Avagliano v. Sumitomo Shoji America, Inc.*, 614 F.Supp. 1397, 1400 (S.D.N.Y.1985). These requirements are plainly met in light of the ongoing systemic nature of the problem of appellate delay in indigent criminal appeals. See City Bar Report.

Accordingly, plaintiff's motion for class certification is granted. All counsel are to appear at a pretrial conference on Friday, September 13, 1991 at 9:00 a.m. in courtroom 302.

IT IS SO ORDERED.